# EXHIBIT A

1   Joseph L. Oliva, Esq. (SBN 113889)
    Matthew R. Toothacre, Esq. (SBN 330298)
2   **JOSEPH OLIVA & ASSOCIATES, P.C.**
    11956 Bernardo Plaza Dr. #532
3   San Diego, CA 92128
    Phone (858) 304-7400
4   oliva@olivafirm.com
    mtoothacre@olivafirm.com
5

**Electronically FILED by**
**Superior Court of California,**
**County of Los Angeles**
**3/05/2025 11:17 AM**
**David W. Slayton,**
**Executive Officer/Clerk of Court,**
**By L. Kulkin, Deputy Clerk**

6   Attorneys for Plaintiff,
    THE SEMLER COMPANIES/MALIBU, a California Limited Partnership
7   dba SADDLEROCK RANCH

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                       **FOR THE COUNTY OF LOS ANGELES**

10  THE SEMLER COMPANIES/MALIBU, a          Case No.:   25SMCV01140
11  California Limited Partnership dba
    SADDLEROCK RANCH;
12                                          **THE SEMLER COMPANIES/MALIBU**
                                            **dba SADDLEROCK RANCH'S**
13              Plaintiff,                  **COMPLAINT FOR:**

14  v.                                      1.  **BREACH OF CONTRACT-FAILURE**
                                                **TO DEFEND**
15  VALLEY FORGE INSURANCE COMPANY,         2.  **BREACH OF CONTRACT-FAILURE**
    a Pennsylvania Corporation;                 **TO SETTLE / INDEMNIFY**
16  STARR INDEMNITY & LIABILITY             3.  **BREACH OF IMPLIED COVENANT**
    COMPANY, a Texas Corporation;               **OF GOOD FAITH AND FAIR**
17  ENDURANCE ASSURANCE                         **DEALING-FAILURE TO DEFEND**
    CORPORATION, a Delaware Corporation;    4.  **BREACH OF IMPLIED COVENANT**
18  GREAT AMERICAN INSURANCE                    **OF GOOD FAITH AND FAIR**
    COMPANY, an Ohio Corporation;               **DEALING-FAILURE TO SETTLE /**
19  HARCO NATIONAL INSURANCE                    **INDEMNIFY**
    COMPANY, an Illinois Corporation;       5.  **DECLARATORY RELIEF**
20  ARTHUR J. GALLAGHER RISK                6.  **NEGLIGENT**
    MANAGEMENT SERVICES, LLC, a                 **MISREPRESENTATION**
21  Delaware Corporation; and              7.  **REFORMATION**
    DOES 1 to 100, inclusive;
22

23              Defendants.

24          Plaintiff, THE SEMLER COMPANIES/MALIBU, a California Limited Partnership dba

25  SADDLEROCK RANCH, alleges causes of action against VALLEY FORGE INSURANCE

26  COMPANY, a Pennsylvania Corporation; STARR INDEMNITY & LIABILITY COMPANY, a

27  Texas Corporation; ENDURANCE ASSURANCE CORPORATION, a Delaware Corporation;

28  GREAT AMERICAN INSURANCE COMPANY, an Ohio Corporation; HARCO NATIONAL

                                        1                                          **9**

INSURANCE COMPANY, an Illinois Corporation; ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, LLC, a Delaware Corporation; and DOES 1 to 100, inclusive (hereinafter collectively referred to as "Defendants") as follows:

## THE PARTIES

1.       Plaintiff, THE SEMLER COMPANIES/MALIBU, a California Limited Partnership dba SADDLEROCK RANCH (hereinafter "Plaintiff" or "Semler") at all times mentioned herein was and is a California limited partnership, duly incorporated and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.

2.       Plaintiff is informed and believes, and thereon alleges, that at all times relevant to the subject matter of this litigation, VALLEY FORGE INSURANCE COMPANY ("Valley Forge") was and is a Pennsylvania corporation, duly incorporated and existing under the laws of the State of Pennsylvania, with its principal place of business in the State of Illinois. Valley Forge was and is at all relevant times either admitted to do business as an insurer under the laws of the State of California or authorized to sell insurance in the State of California through a licensed surplus broker.

3.       Plaintiff is informed and believes, and thereon alleges, that at all times relevant to the subject matter of this litigation, STARR INDEMNITY & LIABILITY COMPANY ("Starr") was and is a Texas corporation, duly incorporated and existing under the laws of the State of Texas, with its principal place of business in the State of New York. Starr was and is at all relevant times either admitted to do business as an insurer under the laws of the State of California or authorized to sell insurance in the State of California through a licensed surplus broker.

4.       Plaintiff is informed and believes, and thereon alleges, that at all times relevant to the subject matter of this litigation, ENDURANCE ASSURANCE CORPORATION ("Endurance") was and is a Delaware corporation, duly incorporated and existing under the laws of the State of Delaware, with its principal place of business in the State of Delaware. Endurance was and is at all relevant times either admitted to do business as an insurer under the laws of the

1    State of California or authorized to sell insurance in the State of California through a licensed

2    surplus broker.

3        5.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant to

4    the subject matter of this litigation, GREAT AMERICAN INSURANCE COMPANY ("Great

5    American") was and is an Ohio corporation, duly incorporated and existing under the laws of the

6    State of Ohio, with its principal place of business in the State of Ohio. Great American was and

7    is at all relevant times either admitted to do business as an insurer under the laws of the State of

8    California or authorized to sell insurance in the State of California through a licensed surplus

9    broker.

10        6.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant to

11    the subject matter of this litigation, HARCO NATIONAL INSURANCE COMPANY ("Harco")

12    was and is an Illinois corporation, duly incorporated and existing under the laws of the State of

13    Illinois, with its principal place of business in the State of North Carolina. Harco was and is at all

14    relevant times either admitted to do business as an insurer under the laws of the State of

15    California or authorized to sell insurance in the State of California through a licensed surplus

16    broker.

17        7.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant to

18    the subject matter of this litigation, ARTHUR J. GALLAGHER RISK MANAGEMENT

19    SERVICES, LLC ("AJG"), formerly ARTHUR J. GALLAGHER RISK MANAGEMENT

20    SERVICES, INC., was and is a Delaware corporation, duly incorporated and existing under the

21    laws of the State of Delaware, with its principal place of business in the State of Illinois. AJG

22    was and is at all relevant times admitted to do business as an insurance broker and/or agent under

23    the laws of the State of California and acted as a broker and/or agent with respect to the Orbic

24    Policies as defined herein and operated under License #0D69293.

25        8.    The true names and capacities, whether individual, corporate, associate, or

26    otherwise of Defendants named herein fictitiously as DOES 1 to 100, inclusive, are presently

27    unknown to Plaintiff, who therefore sues these Defendants by such fictitious names.  Plaintiff is

28    informed and believes, and based thereon alleges, that DOES 1 to 100, and each of them,

1  proximately caused Plaintiff's damages as alleged herein, and are liable for the causes of action

2  alleged.  Plaintiff will amend this Complaint to show their true names and capacities when the

3  same have been ascertained, in accordance with the Code of Civil Procedure § 474.

4     9. Plaintiff is informed and believes, and thereon alleges that Defendants, and each

5  of them, including those described herein as DOES, were at all times mentioned herein

6  mentioned the agents, employees, joint venturers, and/or partners, of Defendants, and as such,

7  were at all times herein mentioned acting within the purpose, course and scope of said agency,

8  employment, joint venture, partnership relationship, and with the consent, permission and

9  ratification of Defendants.

10  **JURISDICTION**

11     10. This Court has personal jurisdiction over the Defendants, and each of them, as

12  they are at all relevant times hereinafter mentioned insurers, agents, or brokers, incorporated,

13  headquartered, and/or engaged in the business of selling and/or placing insurance in the State of

14  California.

15  **THE CLAIM**

16     11. On or about October 25, 2022, Yaghoub Kermanshahi and Simin Korei

17  ("Kermanshahi") filed a lawsuit in the California Superior Court for Los Angeles County Case

18  No. 22SMCV01974 (the "Action") against Orbic Air, LLC ("Orbic"), Hosking Aviation, Inc.

19  ("Hosking"), Butterfly Floral and Event Design, Inc. ("Butterfly Floral"), and Plaintiff in this

20  case. A true and accurate copy of the Complaint is attached hereto as **"Exhibit A."**

21     12. In the Action, Kermanshahi alleges it was an invited guest for a wedding on May

22  30, 2021 located at Saddle Ranch at 32111 Mulholland Highway, Malibu, California 90265.

23     13. In the Action, Kermanshahi allege that during the wedding a helicopter owned

24  and operated by Orbic Air flew over at a low altitude to drop flower pedals. The Action alleges

25  that the negligent operation of the helicopter caused an unsecured wooden archway that was

26  manufactured, designed, constructed, maintained, and/or sold by Butterfly Floral to fall and

27  strike Kermanshahi in the head, causing severe injuries and ultimately his death.

28

14. As Plaintiff solely allowed access and use of the property for the wedding, based on its business custom and practice, Plaintiff required certificates of insurance from any and all wedding vendors naming Plaintiff as an additional insured and further receive written confirmation of its status of its additional insured by receipt of certificates of insurance.

15. On or about December 7, 2023, Kermanshahi filed a First Amended Complaint against Orbic Air, LLC ("Orbic"), Hosking Aviation, Inc. ("Hosking"), Butterfly Floral and Event Design, Inc. ("Butterfly Floral"), and Plaintiff in this case. A true and accurate copy of the Complaint is attached hereto as **"Exhibit B."** The Causes of Action include the following: wrongful death and survivorship; negligent infliction of emotional distress; and loss of consortium.

16. On or about February 27, 2024, Kermanshahi filed a Second Amended Complaint against Orbic Air, LLC ("Orbic"), Hosking Aviation, Inc. ("Hosking"), Butterfly Floral and Event Design, Inc. ("Butterfly Floral"), and Plaintiff in this case. A true and accurate copy of the Complaint is attached hereto as **"Exhibit C."** The Causes of Action include the following: negligence - wrongful death; survivorship, and loss of consortium.

17. On or about March 23, 2023, Plaintiff Semler filed a Cross-Complaint against Orbic, Butterfly Floral, and Hosking including claims of negligence. On or about October 14, 2024, Plaintiff Semler filed a Second Amended Cross-Complaint. A true and accurate copy of the Second Amended Cross-Complaint is attached hereto as **"Exhibit L."**

18. Notably, on or about November 3, 2020, Plaintiff entered into a Facilities Use Agreement with Sophia Hakakian and Eliot Khakshoy, the wedding couple, for the use of the Event Facilities for the purpose of the wedding. A true and accurate copy of the Facilities Use Agreement is attached hereto as **"Exhibit D."**

19. As part of the Facilities Use Agreement, the wedding couple, agreed, in relevant part, as follows:

> **Insurance:** Users, and all vendors and/or subcontractors are each required to obtain general liability insurance coverage with an AM Best A rated carrier, in the amount of no less than $1,000,000.00 per occurrence and a $2,000,000.00 general aggregate, for the duration of the Event (including set-up and clean-up), and will

submit to Saddlerock, with their final payment, an original policy or Certificate of Coverage issued by a licensed agent or representative of the insurer, identifying Saddlerock Ranch, et al., and Ronald and Lisa Semler as additional insureds.

20.     Consistent with this custom and practice, and as discussed below, Butterfly Floral provided Plaintiff a Certificate of Insurance in which Plaintiff was named as an additional insured on Butterfly Floral's liability insurance policy.

21.     Further, based on the insurance requirements of Plaintiff, and as discussed below, Orbic Air provided Plaintiff with a Certificate of Aviation Insurance to cover any and all liabilities arising from the operations of Orbic during the wedding event.

22.     Plaintiff asserts that the accident alleged by Plaintiff was caused, at least in part, by the negligent failure to secure the wedding altar by Butterfly Floral and/or the negligent flying of a helicopter over the wedding on May 30, 2021. Plaintiff asserts it had nothing to do with setting up the wedding altar that allegedly fell over and struck Kermanshahi in the head. Plaintiff asserts it had nothing to do with the negligent flying of the helicopter over the wedding. Finally, Plaintiff asserts it had nothing to do with the vendors hired by the wedding party and their agents. Accordingly, Plaintiff asserts that Butterfly Floral and/or Orbic Air are primarily liable for the injuries claimed in the Action and that such injuries arose out of the helicopter operations of Orbic.

23.     At all material times, Plaintiff has denied liability in the Action and continues to deny any liability whatsoever with respect to the allegations described herein. Nothing herein shall constitute a waiver and is only presented for the sole basis as a trigger of liability coverage owed to Plaintiff under the policies described herein.

## **THE POLICIES**

24.     Valley Forge made, executed, and delivered a Liability Insurance Policy to Butterfly Floral & Event Design Inc. (hereinafter, "Butterfly Floral"), Policy Number B6020789689 (the "Valley Forge Policy"), effective October 26, 2020 through October 26, 2021. Attached as **"Exhibit E"** is the Certificate of Insurance identifying the Valley Forge Policy. The Commercial General Liability coverage part of the Valley Forge Policy is occurrence

based and provides limits of liability of $1,000,000 per occurrence and $2,000,000 general aggregate. Saddlerock Ranch is identified as an additional insured.

25.    Starr made, executed, and delivered a Liability Insurance Policy to Orbic, Policy Number SASICOM60149320-03 (the "Starr Policy"), effective October 24, 2020 through October 24, 2021. Attached as **"Exhibit F"** is the Certificate of Insurance identifying the Starr Policy. The Aircraft Liability coverage part of the Starr Policy is occurrence based and provides limits of liability of $1,000,000 per occurrence for "All Aircraft." Saddlerock Ranch is identified as an additional insured.

26.    Endurance made, executed, and delivered a Liability Insurance Policy to Orbic Air, LLC (hereinafter, "Orbic"), Policy Number NQC6036049 (the "Endurance Policy"), effective October 24, 2020 through October 24, 2021. Attached as **"Exhibit F"** is the Certificate of Insurance identifying the Endurance Policy. The Aircraft Liability coverage part of the Endurance Policy is occurrence based and provides limits of liability of $1,000,000 per occurrence for "All Aircraft." Saddlerock Ranch is identified as an additional insured.

27.    Great American made, executed, and delivered a Liability Insurance Policy to Orbic Air, LLC (hereinafter, "Orbic"), Policy Number QSE96000-01 (the "Great American Policy"), effective October 24, 2020 through October 24, 2021. Attached as **"Exhibit F"** is the Certificate of Insurance identifying the Great American Policy. The Aircraft Liability coverage part of the Great American Policy is occurrence based and provides limits of liability of $1,000,000 per occurrence for "All Aircraft." Saddlerock Ranch is identified as an additional insured.

28.    Harco made, executed, and delivered a Liability Insurance Policy to Orbic Air, LLC (hereinafter, "Orbic"), Policy Number AVC1000092-00 (the "Harco Policy"), effective October 24, 2020 through October 24, 2021. Attached as **"Exhibit F"** is the Certificate of Insurance identifying the Harco Policy. The Aircraft Liability coverage part of the Harco Policy is occurrence based and provides limits of liability of $1,000,000 per occurrence for "All Aircraft." Saddlerock Ranch is identified as an additional insured.

29.     The Valley Forge Policy, Starr Policy, Endurance Policy, Great American Policy, and Harco Policy shall collectively be referred to herein as the "Policies." The Starr Policy, Endurance Policy, Great American Policy, and Harco Policy shall collectively be referred to herein as the "Orbic Policies."

30.     Valley Forge, Starr, Endurance, Great American, and Harco shall be referred to collectively herein as the "Carrier Defendants." Starr, Endurance, Great American, and Harco shall be referred to collectively herein as the "Orbic Carriers."

31.     The Carrier Defendants, by virtue of the Policies discussed above, are therefore obligated to defend and indemnify Plaintiff as an additional insured.

**THE CARRIER DEFENDANTS' FAILURE TO DEFEND AND INDEMNIFY**

32.     The Action was duly tendered to the Carrier Defendants by or on behalf of Plaintiff, however the Carrier Defendants have not agreed to defend or indemnify Plaintiff to date.

***Orbic Air, LLC Carriers***

33.     On or about December 7, 2022, Plaintiff tendered the Action to Orbic and its carriers.

34.     On or about March 21, 2024, Plaintiff tendered the second amended complaint in the Action to Orbic and its insurance carriers. A true and accurate copy of the March 21, 2024 tender is attached as **"Exhibit G."**

35.     On or about April 16, 2024, Starr denied coverage asserting the aircraft involved in the Action was not scheduled on the policy. A true and accurate copy of the April 16, 2024 letter without attachments is attached as **"Exhibit H."** However, Starr does not explain how the carrier and/or Orbic's mistake concerning the scheduling of the helicopter used during the wedding event can reasonably support a denial of coverage.

36.     Starr maintained that the aircraft involved in the Action was not scheduled on the policy. However, the certificate of insurance issued by Defendant AJG stated coverage was provided for "All Aircraft" and that additional insured coverage was provided to Plaintiff for liability "arising out of the operations of" Orbic. The Action has alleged liability arising out of

the operations of Orbic causing bodily injury to the plaintiff, thereby triggering the duty to defend Plaintiff, at a minimum.

37.    At all relevant times, Plaintiff was intended to be named as an additional insured under the Orbic Policies and any aircraft used in the wedding was intended to be a scheduled and/or insured aircraft.

38.    To the extent that the Orbic Policies, as written, mistakenly failed to include coverage for Plaintiff as an additional insured under the Orbic Policies and/or for any aircraft used in the wedding to be scheduled, then the Orbic Policies fail to reflect the intent of the parties.

39.    Such failure is the fault or mistake of AJG, Starr, Endurance, Great American, and Harco, as Plaintiff took all steps as reasonably necessary to assure that the Orbic Policies did cover Plaintiff as an additional insured and/or any aircraft used in the wedding.  Such failure or mistake therefore resulted from unilateral or mutual mistake by the parties or by fraud.

40.    Plaintiff could not have reasonably discovered that the Orbic Policies did not list Plaintiff as an additional insured and/or schedule the aircraft at issue in the Action until Plaintiff was first advised of Starr's coverage position.  Plaintiff was advised by AJG that Plaintiff was an additional insured under the Orbic Policies by way of the certificate of insurance referenced herein and at all times Plaintiff relied on such representation set forth in the certificate of insurance and thus allowed the wedding event to proceed based on such assurance.  As a result, Plaintiff could not have discovered with reasonable diligence the concealment or mistake any sooner than April 2024 because at all times before, it understood that it was an additional insured under the Orbic Policies with respect to "All Aircraft" and for liabilities arising out of the operations of Orbic.

41.    Alternatively, if the Orbic Carriers or AJG either knew or should have known, the Orbic Policies as issued did not accurately comply with the requirements of Plaintiff and did not reflect the true intention and expectation of Plaintiff at the time of issuance of the Policy, such lack of knowledge or understanding by Plaintiff is the result of fraud by omission and concealment by defendants, or the result of mutual or unilateral mistake.  Therefore, based on

unilateral or mutual mistake or as a product of fraud by the Orbic Carriers and AJG, the Orbic Policies should be reformed to reflect Plaintiff as an additional insured under the Orbic Policies and/or provide coverage for the aircraft at issue in the Action.

42.     To the extent the court determines that the Orbic Policies as written do not provide the agreed upon coverage, then the Orbic Policies do not reflect the true intent and desires of the parties.  Said omission in the Orbic Policies was due to the negligence, mutual or unilateral mistake and/or fraud or concealment by the Orbic Carriers with assistance of AJG.

43.     Plaintiff did not discover that the Orbic Policies did not list Plaintiff as an additional insured and/or schedule the aircraft at issue in the Action until receiving the denial of coverage letter from Starr in April of 2024.

44.     Based on the representations and assurances made by the Orbic Carriers and AJG, Plaintiff could not have discovered that the Orbic Policies did not list Plaintiff as an additional insured and/or schedule the aircraft at issue in the Action until receiving the denial of coverage letter from Starr in April of 2024.

45.     Plaintiff relied on the representations made by the Orbic Carriers and AJG, that Plaintiff was an additional insured under the Orbic Policies and/or that coverage was provided for all aircraft.

46.     If Plaintiff had discovered that the Orbic Policies did not list Plaintiff as an additional insured and/or schedule the aircraft at issue in the Action, Plaintiff would have either sought to reform the Orbic Policies at an earlier date or would have sought coverage elsewhere.

47.     Plaintiff would not have accepted, agreed to or authorized the issuance of the Orbic Policies if it knew at the time of placement the Orbic Policies did not list Plaintiff as an additional insured and/or failed to schedule the aircraft at issue in the Action.

48.     Plaintiff is entitled to the benefits and proceeds from the insurance contracts as the parties intended.

49.     To reflect the true intent of the parties, Plaintiff shall be named as an additional insured on the Orbic Policies through the doctrine of reformation.

50.     Alternatively, to the extent the Court finds coverage is not afforded to Plaintiff, Plaintiff specifically requested and reasonably expected to obtain additional insured coverage for liability arising out of Orbic's operations. Plaintiff communicated these insurance requirements to Orbic.

51.     AJG, as an agent of Orbic's carriers, had a duty to review, evaluate, and ensure the additional insured coverage was obtained for the Plaintiff.  Notwithstanding this duty, AJG failed to secure such coverage.  AJG represented that such coverage was placed in favor of Plaintiff as an additional insured on the certificate of insurance but failed to recognize that the Plaintiff was not identified as an additional insured under the policy by name, schedule, definition of who is an insured or otherwise.

52.     AJG, at all material times, was required to convey to the Orbit Carriers Plaintiffs' insurance requirements prior to and during the placement of Orbit's policies and to review the policies to ensure compliance with such requirements including the securing of additional insured coverage and ensuring aircraft at issue in the Action was scheduled providing liability coverage in the event of an accident involving the subject helicopter. AJG failed to adequately undertake such tasks on behalf of Plaintiff by failing to secure additional insured coverage for the Plaintiff and to advise Plaintiff of such omission.

53.     At all material times, AJG knew, or should have known, that Plaintiff required additional insured coverage for all aircraft and for liabilities arising out of the operations of Orbic as set forth in the certificate of insurance.  Moreover, AJG knew, or should have known that omitting Plaintiff as an additional insured under the policy was not consistent with, nor in compliance with, Plaintiff's requirements and that a serious uninsured liability exposure causing significant financial harm because of AJG's failure to secure a policy providing appropriate coverage.

54.     AJG failed to obtain the required coverage and/or failed to inform Plaintiff the Orbic Policies did not insure Plaintiff as an additional insured.

55.     At all material times, Plaintiff relied on the certificate of insurance in permitting the helicopter to operate at the wedding event. As such, AJG breached its duty to Plaintiff by

misrepresenting the coverage provided in the certificate of insurance, failing to obtain the requested coverage, and thereafter failing to inform Plaintiff that the requested coverage was not obtained.  Further, at no time did AJG advise Plaintiff that the Orbic Policies did not provide coverage to the Plaintiff.

56.    At no time did AJG ever inform, describe or explain the absence of coverage to Plaintiff.

57.    As set forth above, AJG failed to take the reasonable and necessary action to secure Plaintiff as an additional insured under the Orbic Policies.

58.    Defendant AJG, acknowledged and agreed to secure additional insured coverage for Plaintiff under the Orbic Policies.

59.    Based on the foregoing, AJG breached its duty of care to Plaintiff.

***Butterfly Floral Carrier***

60.    On or about December 14, 2022, Plaintiff tendered the demand for defense and indemnity under the additional insured endorsement to Valley Forge. A true and accurate copy of the December 14, 2023 tender is attached as **"Exhibit I."**

61.    On March 21, 2024, Plaintiff re-tendered the demand for a full and complete defense and indemnity under the additional insured endorsement made part of the Valley Forge Policy. A true and accurate copy of the March 21, 2024 tender without attachments is attached as **"Exhibit J."**

62.    On or about April 17, 2024, Valley Forge denied coverage to Plaintiff as an additional insured without any explanation whatsoever. A true and accurate copy of the April 17, 2024 denial letter is attached as **"Exhibit K."** Valley Forge denied coverage to Plaintiff notwithstanding the legal obligation to do so while at the same time defending Butterfly Floral in the Action.

63.    Based on the foregoing, the Carrier Defendants unreasonably failed to respond and/or denied Plaintiff's repeated tenders of the Action, which contained express allegations of liability for bodily injury and/or property damage caused, in whole or in part, by the operations

1    of Butterfly Floral and/or Orbic's acts or omissions or the acts or omissions of those acting on

2    their behalf.

3        64.    Commencing from the date of tender of the defense of the Action, the Carrier

4    Defendants should have, but have wrongfully failed to agree to participate in the defense of

5    Plaintiff in the Action pursuant to the terms and conditions of the policies referenced herein.

6    Notwithstanding the legal obligation to participate in the defense of the Action on behalf of

7    Plaintiff, the Carrier Defendants have instead acted adverse to Plaintiff's interests.

8        65.    As a result of these claims in the Action, Plaintiff has been compelled to incur

9    loss and adjustment, defense, settlement, mitigation, and/or investigative costs as well as

10   attorneys' fees, court costs, expert fees and other expenses in the Action and in this action and in

11   other claims and actions, may in the future be compelled to incur additional costs, expenses and

12   fees as a result of the claims in the Action.

13       66.    In accordance with its general business practice, Plaintiff required Orbic and

14   Butterfly Floral to obtain policies of comprehensive general liability insurance with broad form

15   bodily injury and property damage coverage, among other coverage, for the benefit of Plaintiff.

16   Moreover, the coverage was to specifically reflect that Plaintiff was named as an additional

17   insured under the policy or policies of comprehensive general liability insurance to which they

18   refer.  Plaintiff is informed and believes, and thereon alleges, that Plaintiff was in fact named as

19   an additional insured under the policies issued to Butterfly Floral and Orbic entitling Plaintiff to

20   defense and indemnity.

21       67.    The Carrier Defendants were tendered the defense of the Action pursuant to the

22   additional insured endorsement made part of the Policies referenced herein.

23       68.    Upon receipt of the tenders of the defense of the Action, the Carrier Defendants

24   were required to defend the Action pursuant to the terms and conditions of the Policies and

25   additional insured endorsements at issue.  Notwithstanding the legal obligation to participate in

26   the defense of the Action, the Carrier Defendants failed to fund the defense of the Action as

27   required under the terms of the Policies and additional insured endorsements at issue.

28

69.     Pursuant to the Policies referred to hereinabove, the Carrier Defendants promised to pay all sums which Plaintiff became obligated to pay because of bodily injury and/or property damage at the caused by an occurrence, during the effective coverage period of the policy, and further agreed to defend Plaintiff with respect to any suit seeking those damages, even if any of the claims were groundless, false or fraudulent. Plaintiff is informed and believes, and thereon alleges, that the legal effect of the above-described policies and additional insured endorsements is as set forth in this paragraph and herein.

70.     Moreover, the additional insured endorsements issued by the Carrier Defendants afforded Plaintiff coverage for liability arising out of Orbic's and/or Butterfly Floral's acts or omissions, pursuant to both the terms of the endorsements and as construed by California courts. Together, as construed by California courts, the Policies and the additional insured endorsements obligate the Carrier Defendants to immediately and entirely defend the entire Action on behalf of Plaintiff with respect to any and all third party suits for bodily injury and/or property damage potentially arising out of Orbic's and/or Butterfly Floral's performance of operations and the acts or omissions or the acts or omissions of those acting on Orbic's and/or Butterfly Floral's behalf.

71.     Further, the Policies and additional insured endorsements obligates the Carrier Defendants to indemnify Plaintiff with respect to any and all third party claims for bodily injury and/or property damage arising out of the acts or omissions of Orbic and/or Butterfly Floral or the acts or omissions of those acting on Orbic's and/or Butterfly Floral's behalf.  The Policies and additional insured endorsements afford coverage for bodily injury and/or property damage that is caused (or in the case of the defense obligation, potentially caused) by an occurrence that takes place in the coverage territory.  An occurrence is defined under the Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

72.     The plaintiffs in the Action have in fact made allegations and claims indicating, or evidence is otherwise available, that bodily injury and/or property damage occurred or potentially occurred during the effective periods of the insurance Policies issued by the Carrier Defendants.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Failure to Defend)

### (By Plaintiff and Against Carrier Defendants and Does 1 to 100, inclusive)

73.    Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

74.    As set forth above, the Carrier Defendants among other things, pursuant to the policy terms and conditions, agreed to investigate, adjust, immediately defend, and settle the claims asserted against Plaintiff on account of bodily injury and/or property damage caused by an occurrence, falling within or potentially falling within the coverage of, as defined in, each insurance policy and additional insured endorsement referenced herein. Based on the actual authority extended to AJG, as an appointed insurance agent, the Orbic Carriers and each of them were bound to comply with the intended coverage set forth under the certificate of insurance, namely, that Plaintiff was to be named as an additional insured arising out of the operations of Orbic and/or Butterfly Floral. Based on actual or apparent authority and/or ratification, the Carrier Defendants, and each of them, were required to provide liability coverage, including but not limited to a full and complete defense for the Action filed against Plaintiff arising out of the operations of the subject helicopter.

75.    Pursuant to the insurance policies and additional insured endorsements, the Carrier Defendants also had a duty to conduct a reasonable, adequate and diligent investigation of any claims made against Plaintiff and affecting the Carrier Defendant's duties to defend.

76.    Plaintiff is informed and believes and thereon alleges that the Carrier Defendants have issued the insurance policies as attributed to them hereinabove in accordance with the coverage confirmed in the certificates of insurance.  Said policies issued do in fact at a minimum potentially cover one or more of the allegations raised in the Action and require the Carrier Defendants to fully defend and indemnify Plaintiff in the Action.

77.    Plaintiff has duly tendered the defense of each of the claims made against it in the Action to the Carrier Defendants, but the Carrier Defendants has expressly refused to defend Plaintiff for the claims brought against it in the Action.

78.     Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of the Policies, except to the extent that Plaintiff was prevented by the Carrier Defendants or excused from such performance, or said conditions, covenants and promises have accrued or have been waived.

79.     As a result of the Action, Plaintiff has been forced to incur settlement, loss, adjustment and investigative costs, including attorneys' fees and costs, experts' fees and costs, court costs and other expenses, because of property damage and/or bodily injury caused by an occurrence falling within, or potentially falling within the coverage of, or as defined in, the Policies. In breach of the Policies, the Carrier Defendants through their respective officers and/or managerial agents, has refused and continues to refuse to pay and/or reimburse Plaintiff for the costs of defense, repair, loss adjustment, mitigation, investigation and other costs and expenses as a result of the Action.

80.     Plaintiff is informed and believes and thereon alleges that the Carrier Defendants did not reasonably nor diligently investigate the claims asserted by plaintiffs in the Action against Plaintiff or acknowledge and/or accept Plaintiff's request for defense and/or coverage as to the Action.

81.     The failure and refusal of the Carrier Defendants to adequately investigate the claims made against Plaintiff in the Action; the failure and refusal to provide an appropriate defense and/or coverage to Plaintiff without such an adequate investigation; and the failure and refusal of the Carrier Defendants to adequately respond to the tenders of defense and/or coverage and other correspondence from Plaintiff also constitutes breaches of the terms and conditions of the policies at issue.

82.     By reason of the Carrier Defendants' refusal to defend Plaintiff pursuant to the express obligation to do so in the insurance Policies, the Carrier Defendants have breached their written contracts of insurance under which Plaintiff is entitled to coverage as an additional insured.

83.     As a direct and proximate result of the breaches by the Carrier Defendants of their respective duties, Plaintiff has incurred substantial attorneys' fees and costs, experts' fees and

**24**

costs, costs and other expenses in defense, loss adjustment, mitigation, investigation and other costs and expenses in an amount within the jurisdictional limits of this Court, according to proof. As a direct and proximate result of the Carrier Defendants' breaches of their respective contractual duties and in mitigation of Plaintiff's own damages, Plaintiff has incurred attorneys' fees and costs, experts' fees and costs and other costs and expenses in bringing this action, in an amount according to proof. Plaintiff has been damaged in an amount in excess of the jurisdictional requirements of this Court, in an amount to be established at the time of trial, according to proof.

## SECOND CAUSE OF ACTION

### Breach of Written Contract – Failure to Settle/Indemnify

### (By Plaintiff and Against Carrier Defendants and Does 1 to 100, inclusive)

84. Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

85. Plaintiff is informed and believes and thereon alleges that the Carrier Defendants issued the insurance Policies as set forth above and that said Policies in fact extend coverage with reference to the Action filed against Plaintiff as an additional insured; and that said Policies in fact apply to an additional insured for the Action, requiring the Carrier Defendants to indemnify Plaintiff in the Action.

86. Plaintiff has duly tendered the defense of each of the claims made against it in the Action to the Carrier Defendants in Plaintiff's capacity as an additional insured. The Carrier Defendants have refused to indemnify Plaintiff for the claims brought against Plaintiff in the Action.

87. Plaintiff requested and demanded indemnification for the claims made against it in the Action to the Carrier Defendants. The Carrier Defendants failed and refused to acknowledge and recognize that all claims in the Action are in fact covered, or expressly and unequivocally refused to indemnify Plaintiff for all of the claims brought against Plaintiff in the Action as required under the terms of the Policies and under California law. Specifically, the Carrier Defendants at all material times refused to settle the Action on behalf of Plaintiff, who is

17

25

entitled to such indemnification given the scope of exposure, the likelihood of liability being imposed on Plaintiff arising from the direct negligence of Orbic and/or Butterfly Floral, and whether or not there is a substantial likelihood of a judgment in excess of the Policies of insurance.

88.    Plaintiff has performed all conditions, covenants and promises required of it to be performed in accordance with the terms and conditions of the Policies, except to the extent that Plaintiff is prevented by the Carrier Defendants or excused from such performance, or said conditions, covenants and promises have occurred or been waived.

89.    By reason of the Carrier Defendants' refusal to indemnify Plaintiff despite their respective express obligations to do so under the insurance Policies and additional insured endorsements, the Carrier Defendants have breached their respective written contracts of insurance under which Plaintiff is entitled to coverage as an additional insured.

90.    As a direct and proximate result of the breaches of the Carrier Defendants, Plaintiff has been damaged in excess of the jurisdictional requirements of this Court, in an amount to be established at the time of trial, according to proof.

## THIRD CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing – Failure to Defend**

**(By Plaintiff and Against Carrier Defendants and Does 1 to 100, inclusive)**

91.    Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

92.    The Carrier Defendants at all material times had the duty to act fairly and in good faith to Plaintiff in carrying out its responsibilities under their Policies of insurance.

93.    Pursuant to the insurance Policies, the Carrier Defendants had implicit obligations to act fairly and in good faith to Plaintiff to promptly and reasonably investigate claims against Plaintiff, and to make reasonable coverage decisions. The policies identified herein are subject to an implied covenant of good faith and fair dealing such that no party will disturb the rights of the other to obtain the full benefits of the contract. The Carrier Defendants breached the implied covenant of good faith and fair dealing when refusing to defend the Action, and/or to provide

necessary coverage(s) owed under the Policies when tendered, and at all material times thereafter, notwithstanding repeated requests to do so.

94.    Plaintiff is informed and believes, and on such basis alleges that the Carrier Defendants breached their respective obligations to act fairly and in good faith towards Plaintiff by committing, among other things, the following acts and omissions:

a.    Unreasonably refusing to immediately defend Plaintiff in the Action after receipt of tender thereof and repeated communications from Plaintiff to the Carrier Defendants thereafter;

b.    Failing to conduct a reasonable investigation and unreasonably withholding monetary payment of the defense;

c.    Causing Plaintiff severe financial hardship by refusing to defend;

d.    Failing to give a reasonable interpretation to the provisions of the Policies, failing to reasonably apply provisions of the Policies to the claims, and unreasonably refusing to acknowledge that the claims asserted against Plaintiff in the Action were and are potentially covered, and failing to timely, and without delay, pay for the reasonable and necessary defense incurred after the tender;

e.    Failing to provide Plaintiff with any reasonable or justifiable basis for the decision to deny and/or delay the actual participation of the defense of the Action;

f.    Interpreting the provisions of the policies and the factual circumstances so as to resolve ambiguities and uncertainties against Plaintiff and to favor their own economic interests;

g.    Misrepresenting the insurance policy provisions;

h.    Embarking on a course of conduct and pattern and practice, whereby the Carrier Defendants would fail and/or refuse to respond to tenders made by or on behalf of Plaintiff and/or to acknowledge the defense obligation owed to Plaintiff and/or to participate in the mounting and funding of the defense of Plaintiff with respect property damage and/or bodily injury claims arising, in whole or in part, out of the operations of Orbic and/or Butterfly Floral, including without limitation the Action;

i.     Continuing to pursue such course of conduct and pattern and practice after California case law established the immediacy of the defense obligation owed under additional insured endorsements and where the duty to defend is based on the mere potentiality of coverage arising from the operations of Orbic and/or Butterfly Floral for which the additional insured is covered for.  The Carrier Defendants disobeyed clear legal precedent in a known manner in clear and conscious disregard to Plaintiff's rights;

j.     Continuing to pursue such course of conduct and pattern and practice of not providing any reasonable basis to delay, reject, or deny the defense tendered and requested, as well as the refusal of the Carrier Defendants to immediately assume the defense upon tender of a potentially covered claim, and the importance of an insurer's obligation to defend its additional insured immediately upon tender of defense;

k.     Continuing to pursue such course of conduct and pattern and practice after publication of, and notwithstanding the ruling of the California Supreme Court in *Buss v. Superior Court* (1997) 16 Cal.4th 35, where the California Supreme Court emphasized to California insurers the importance of the defense obligation, the entirety of the defense obligation and the immediacy of the defense obligation;

l.     Continuing to pursue such course of conduct after and pattern and practice after publication of, and notwithstanding the ruling of the appellate court in *Presley Homes, Inc. v. American States Ins. Co.* (2001) 90 Cal.App.4th 571, where the court re-emphasized to California insurers, and particularly insurers under additional insured endorsements, of the importance of the defense obligation, the entirety of the defense obligation and the immediacy of the defense obligation;

m.     Pursuing such a course of conduct and pattern and practice, notwithstanding the terms of the Policies imposing a duty to immediately defend potentially covered claims asserted against the additional insured, notwithstanding repeated advisements of the California Supreme Court over the last thirty years of the breadth of the defense obligation, the immediacy of the defense obligation upon tender and the need to defend by funding of the defense, and notwithstanding     repeated     advisements     of     California     Courts     regarding     the     public

20

**28**

1    policies supporting the obligation of an insurer to provide its additional insured an immediate

2    defense in the context of construction defect claims; and

3            n.      Pursuing such a course of conduct and pattern and practice in violation of the

4    terms of the Policies and California law with the knowledge, understanding, consent and approval

5    of the defendant insurers' respective managing officers, directors, agents and employees.

6            95.     The foregoing acts and omissions were unreasonable, malicious, fraudulent,

7    oppressive and despicable.

8            96.     The respective officers, directors and/or managing agents and/or employees of the

9    Carrier Defendants participated in, authorized and/or ratified the wrongful conduct of said

10   Carrier Defendants as alleged above.

11           97.     As a result of the bad faith conduct of the Carrier Defendants in this matter,

12   Plaintiff has incurred substantial attorneys' fees, costs and expenses in defense, loss adjustment,

13   mitigation, investigation and settlement and other costs and expenses in response to the Action

14   and has been required to bring this Complaint to enforce its rights as a named insured under the

15   policies mentioned herein.  Plaintiff is entitled to recover as damages against each of the Carrier

16   Defendants, all the aforementioned fees, costs and expenses which it has incurred as a result of

17   the Action, together with interest thereon.  Plaintiff has suffered damages and will continue to

18   suffer damages within the jurisdiction of this Court, according to proof.

19           98.     Plaintiff is further entitled to recover as damages against the Carrier Defendants,

20   all fees, expenses and costs incurred in this action to enforce its rights under the respective

21   insurance Policies, plus interest thereon, according to proof.

22           99.     The above described conduct of the Carrier Defendants has been and continues to

23   be unreasonable, capricious and arbitrary, and constitutes breach of the covenant of good faith

24   and fair dealing contained in the insurance Policies referred to above in this Complaint.  The

25   above-described conduct further constitutes malicious, oppressive and despicable conduct and

26   conscious disregard for Plaintiff's rights, and stems from improper and evil motives, including

27   the Carrier Defendants' desire to reduce or avoid their obligations to Plaintiff, so as to justify an

28   award of punitive and exemplary damages.

**FOURTH CAUSE OF ACTION**

**Breach of the Implied Covenant of Good Faith and Fair Dealing - Failure to Settle/Indemnify**

**(By Plaintiff and Against Carrier Defendants and Does 1 to 100, inclusive)**

100.   Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

101.   Inherent in the insurance Policies issued by the Carrier Defendants to Plaintiff as an additional insured is an implied covenant of good faith and fair dealing which imposed upon the Carrier Defendants the duty to deal fairly and honestly with Plaintiff in good faith and to do nothing to the detriment of Plaintiff, or to impair, interfere with, hinder, potentially deprive Plaintiff of its rights and benefits under said insurance policy, including the indemnification of Plaintiff as a result of settlements, awards or judgments that may have been or may be imposed as a result of the Action.   The Carrier Defendants was under a further duty to honor the contractual obligations of indemnity contained in applicable insurance policies with respect to which the Plaintiff was an additional insured.

102.   The Carrier Defendants at all material times had the duty to act fairly and in good faith to Plaintiff in carrying out their responsibilities under the Policies of insurance.

103.   Pursuant to the insurance Policies, the Carrier Defendants have implicit obligations to act fairly and in good faith to Plaintiff, to promptly and reasonably investigate claims against Plaintiff, and to make reasonable coverage decisions.

104.   Plaintiff has performed all conditions, covenants and promises on its part to be performed in connection with said insurance policies, thereby securing the benefits of the insurance policies, except to the extent that Plaintiff was prevented by the Carrier Defendants or excused from such performance, or said conditions, covenants and promises have occurred or been waived.

105.   The Carrier Defendants disregarded Plaintiff's rights under the insurance policies and unreasonably, wrongfully and in bad faith denied coverage, including refusing to indemnify Plaintiff herein under the insurance Policies as hereinabove alleged, the Carrier Defendants (through its respective officers, directors and/or managing agents), has breached the implied

1    covenant of good faith and fair dealing contained in the insurance Policies. Said breach

2    included, but is not limited to, the following:

3            a.     Unreasonably failing to timely and unequivocally confirm to Plaintiff that

4    the Carrier Defendants would acknowledge the existence and the validity of coverage under the

5    Policies for each of the claims asserted against Plaintiff in the Action and fully indemnify Plaintiff

6    for such claims;

7            b.     Unreasonably failing to timely agree to pay its assertable and/or pro rata

8    share of all indemnity obligations arising from the Action where settlement obligations of the

9    Carrier Defendants, and each of them, required the Carrier Defendants to pay such damages;

10           c.     Inclusive in the Carrier Defendants' obligation to act fairly and in good faith

11   to Plaintiff is the Carrier Defendants' duty to properly and reasonably investigate claims against

12   Plaintiff and to make reasonable coverage decisions. The Carrier Defendants breached their

13   obligation to act fairly and in good faith toward Plaintiff by delaying the investigation, evaluation

14   and confirmation of the coverage obligation, by ignoring or failing to or refusing to respond to

15   Plaintiff's tender of the Action and Plaintiff's repeated advisements thereafter and/or by

16   acknowledging the obligation to Plaintiff under the Policies referenced herein, but refusing to

17   comply with such obligations by refusing to participate in, fund or otherwise contribute to

18   settlement of the Action; and

19           d.     The Carrier Defendants' refusal to provide proper settlement authority owed

20   to Plaintiff under the Policies, even though it was reasonably clear that the claims in the Action were

21   covered by the subject insurance Policies, has compelled Plaintiff to engage legal counsel and to

22   initiate this Complaint to recover such indemnity benefits owed and to compel the Carrier

23   Defendants to honor its obligations under the insurance policies.

24        106.     Plaintiff is informed and believes and thereon alleges that the Carrier Defendants'

25   refusal and denial through their respective officers, directors and/or managing agents of their

26   duties to indemnify Plaintiff under their Policies was willful, malicious, intentional, and was

27   done with the intent to oppress Plaintiff and with conscious disregard for Plaintiff's rights under

28   the insurance Policies. The Carrier Defendants' willful, malicious and oppressive conduct as

1   hereinabove alleged was engaged in solely to satisfy their profit motives and corporate financial

2   income objectives, to the detriment of Plaintiff.  This motive was evidenced by the Carrier

3   Defendants adversarial approach to Plaintiff's claims from the time they were made and their

4   alignment with the interests of their own companies and not the interests of Plaintiff as an

5   additional insured under the Policies.

6        107.   Plaintiff is entitled to recover as damages against each of the Carrier Defendants,

7   inclusive, all fees, expenses and costs incurred in this action to enforce their rights under the

8   respective insurance policies, plus interest thereon, according to proof.

9        108.   The above-described conduct of the Carrier Defendants has been and continues to

10  be unreasonable, capricious and arbitrary, and constitutes breach of the covenant of good faith

11  and fair dealing contained in each and all of the insurance policies referred above in this

12  Complaint.   The above-described conduct further constitutes malicious, oppressive and

13  despicable conduct and conscious disregard of Plaintiff's rights, and stems from improper and

14  evil motives, including the Carrier Defendants' desire to reduce or avoid their obligations to

15  Plaintiff, so as to justify an award of punitive and exemplary damages.

16  **<u>FIFTH CAUSE OF ACTION</u>**

17  **Declaratory Relief**

18  **(By Plaintiff and Against Carrier Defendants and Does 1 to 100, inclusive)**

19       109.   Plaintiff repeats, re-alleges and incorporates by reference all of the previous

20  allegations contained in this Complaint as though fully set forth herein.

21       110.   As set forth above, the Carrier Defendants, among other things, agreed to

22  investigate, adjust, defend and/or indemnify Plaintiff as to any claims made in the Action of

23  alleged property damage and/or bodily injury caused by an occurrence falling within and/or

24  potentially falling within the coverage defined in the Policies.

25       111.   Defense fees and costs, including attorneys' fees and costs, experts' fees and

26  costs, settlement, repair, investigation, loss and adjustment fees, costs and expenses have been

27  incurred by Plaintiff because of property damage and/or bodily injury caused by an occurrence

28

1    falling within and/or potentially falling within the coverage of, and/or as defined in, the Policies

2    referred to hereinabove.

3        112.    Plaintiff provided timely notice of the claims asserted against it in the Action to

4    the Carrier Defendants. Plaintiff has performed each covenant and/or condition which on its part

5    must be performed in order to obtain a defense under the Policies referenced hereinabove, or has

6    been excused from so performing as a result of the Carrier Defendants' breach of their respective

7    insurance agreements, including refusals to defend and/or indemnify Plaintiff among other

8    matters.

9        113.    A dispute has arisen between Plaintiff and the Carrier Defendants in that Plaintiff

10   contends that it was and is entitled to be defended and indemnified in the Action by the Carrier

11   Defendants pursuant to the insurance Policies and additional insured endorsements and is entitled

12   to be reimbursed for the attorneys' fees and costs, experts' fees and costs, and other costs and

13   expenses in the defense, repayment, loss adjustment, mitigation, investigation and settlement and

14   other costs and expenses incurred as a result of the Action.  Plaintiff is informed and believes and

15   thereon alleges that the Carrier Defendants unreasonably contend otherwise.

16       114.    Plaintiff contends, and on information and belief the Orbic Carriers dispute, that

17   AJG has actual binding authority and that the intent to name Plaintiff as an additional insured for

18   all aircraft, including but not limited to the helicopter used in the wedding event, is covered

19   under the Orbic Policies.

20       115.    An actual controversy exists between Plaintiff and the Carrier Defendants

21   regarding the duties of the Carrier Defendants to defend Plaintiff pursuant to the insurance

22   Policies and additional insured endorsements as to the claims asserted in the Action against

23   Plaintiff, and to indemnify Plaintiff for any damages and/or settlement monies which Plaintiff

24   may be required to pay in connection with the Action.  A declaratory judgment is necessary and

25   appropriate to determine the rights and duties of the parties under the insurance Policies.

26

27

28

## SIXTH CAUSE OF ACTION

### Negligent Misrepresentation

### (By Plaintiff and Against AJG and Does 1 to 100, inclusive)

116.    Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation contained in all preceding paragraphs of this complaint as though set forth at length herein.

117.    Plaintiff specifically requested and reasonably expected to obtain additional insured coverage for liability arising out of Orbic's operations. Plaintiff communicated these insurance requirements to Orbic. Given the appointment on file with the department of insurance, as well as the representation made in the certificate of insurance, Plaintiff reasonably relied on AJG as an agent of Orbic's carriers.

118.    AJG, as an agent of Orbic's carriers, had a duty to review, evaluate, and ensure the additional insured coverage was obtained for the Plaintiff as represented in the certificate of insurance at issue on which Plaintiff reasonably relied.  Notwithstanding this obligation, the Orbic Carriers have disavowed AJG's conduct and refused to acknowledge that AJG had the authority to secure the coverage represented in the certificate.  AJG represented through its certificate of insurance that such coverage was placed in favor of Plaintiff as an additional insured on the certificate of insurance but based on the denial of coverage from the Orbic Carriers failed to recognize that the Plaintiff was not provided coverage as an additional insured. AJG represented that it was an authorized agent of the Orbic Carriers and Plaintiff has determined that AJG is an appointed agent with the Department of Insurance and is thus an authorized agent of the Orbic Carriers with the actual binding authority to place the intended additional insured coverage set forth in the certificate of insurance. At all material times, Plaintiff reasonably relied on the representations made by AJG, as the authorized representative of the Orbic Carriers, in believing that the required coverage was placed and thus allowing the wedding event to take place, including the use of the subject helicopter at issue in the Action. Moreover, the subject certificate of insurance was intended to and was in fact relied upon by Plaintiff and the Orbic Carriers.

119.    AJG, at all material times, was required to submit Plaintiffs' insurance needs and requirements to the insurer during the placement of Orbic's policies and to review the policies to ensure compliance with such requirements including the securing of additional insured coverage. AJG failed to adequately undertake such tasks specified in the certificate of insurance by failing to secure additional insured coverage for the Plaintiff and to advise Plaintiff of such omission based on the Orbic Carrier's denial of coverage.

120.    At all material times, AJG knew, or should have known, that Plaintiff required additional insured coverage for all aircrafts and for liabilities arising out of the operations of Orbic as intended and expressed in the certificate of insurance, on which Plaintiff reasonably relied to its detriment in allowing the helicopter to operate at the wedding based on the representations made in the certificate of insurance.  Moreover, AJG knew, or should have known that omitting Plaintiff as an additional insured under the policy was not consistent with, nor in compliance with, Plaintiff's requirements and that a serious uninsured liability exposure causing significant financial harm because of AJG's failure to secure a policy providing appropriate coverage.

121.    AJG failed to obtain the required coverage and/or failed to inform Plaintiff the Orbic Policies did not insure Plaintiff as an additional insured.

122.    As such, AJG misrepresented the coverage provided in the certificate of insurance, failing to obtain the requested coverage, and thereafter failing to inform Plaintiff that the requested coverage was not obtained.  Further, at no time did AJG advise Plaintiff that the Orbic Policies did not provide coverage to the Plaintiff.

123.    At no time did AJG ever inform, describe or explain the absence of coverage to Plaintiff.

124.    As set forth above, AJG failed to take the reasonable and necessary action to secure Plaintiff as an additional insured under the Orbic Policies.

125.    Defendant AJG, acknowledged and agreed to secure additional insured coverage for Plaintiff under the Orbic Policies.

126.    Based on the foregoing, AJG negligently misrepresented the certificate of insurance to Plaintiff.

127.    AJG's conduct fell below the industry standard of care by negligent misrepresenting the scope of coverage, failing to secure liability coverage for Plaintiff, failing to review the policies, and failing to correct such mistake when the policies were delivered and reviewed.

128.    The conduct of AJG was a substantial factor in causing harm to Plaintiffs.  As a result, Plaintiff has suffered damages.

129.    As an actual, proximate and substantial cause of AJG's breach, Plaintiff has been damaged in an amount to be proven at trial.

130.    As a further direct and proximate result of the negligent misrepresentation of AJG, Plaintiff was forced to expend money as part of this litigation to obtain the insurance that would have otherwise been provided but for AJG's negligent misrepresentation and which would have avoided the use of the helicopter and the incurring of defense fees and costs that would have been covered under the Orbic Policies. Plaintiff is therefore entitled to recover the attorneys' fees and costs incurred in pursuing and obtaining the coverage that was not provided because of the negligence of AJG as damages against AJG under the Tort of Another Doctrine. (*See Third Eye Blind, Inc. v. Near North Entertainment Insurance Services, LLC, et al.* (2005) 127 Cal.App.4[th] 1311.)

### SEVENTH CAUSE OF ACTION

**Reformation**

**(By Plaintiff and Against Orbic Carriers and Does 1 to 100, inclusive)**

131.    Plaintiff repeats, re-alleges and incorporates by this reference each and all allegations contained in this Complaint.

132.    Based on the apparent authority and/or agency agreement between AJG and Orbic Carriers, at all relevant times, the parties mutually intended Plaintiff to be named as an additional insured under the Orbic Policies and/or schedule the aircraft at issue in the Action.

133.    To the extent that the Orbic Policies, as written, mistakenly failed to include coverage for Plaintiff as an additional insured under the Orbic Policies and/or schedule the aircraft at issue in the Action, then the Orbic Policies fail to reflect the intent of the parties based on the actual or apparent authority of AJG in issuing the certificate of insurance. Reformation is therefore mandated based on the conveyance of authority provided and all the Orbic Carriers are bound by the certificate of insurance.

134.    Such failure is the fault of AJG, Starr, Endurance, Great American, and Harco, as Plaintiff took all steps as reasonably necessary to assure that the Orbic Policies did cover Plaintiff as an additional insured.  Such failure therefore resulted from unilateral or mutual mistake by the parties or by fraud.

135.    Plaintiff could not have reasonably discovered that the Orbic Policies did not list Plaintiff as an additional insured and/or did not schedule the aircraft at issue in the Action until Plaintiff was first advised of Starr's coverage position.  Plaintiff was advised by AJG that Plaintiff was an additional insured under the Orbic Policies by way of the certificate of insurance referenced herein and that such insurance applied to all aircraft.  As a result, Plaintiff could not have discovered with reasonable diligence the concealment or mistake any sooner than April 2024 because at all times before, it understood that it was an additional insured under the Orbic Policies with respect to "All Aircraft" and for liabilities arising out of the operations of Orbic.

136.    Alternatively, if the Orbic Carriers or AJG either knew or should have known, the Orbic Policies as issued did not accurately comply with the requirements of Plaintiff and did not reflect the true intention and expectation of Plaintiff at the time of issuance of the Orbic Policies, such lack of knowledge or understanding by Plaintiff is the result of fraud by omission and concealment by defendants, or the result of mutual or unilateral mistake.  Therefore, based on unilateral or mutual mistake or as a product of fraud by the Orbic Carriers and AJG, the Orbic Policies should be reformed to reflect Plaintiff as an additional insured under the Orbic Policies.

137.    To the extent the court determines that the Orbic Policies as written do not provide the agreed upon coverage, then the Orbic Policies do not reflect the true intent and

desires of the parties.  Said omission in the Orbic Policies was due to the negligence, mutual or unilateral mistake and/or fraud or concealment by the Orbic Carriers with assistance of AJG.

138.    Plaintiff did not discover that the Orbic Policies did not list Plaintiff as an additional insured until receiving the denial of coverage letter from Starr in April of 2024.

139.    Based on the representations and assurances made by the Orbic Carriers and AJG, Plaintiff could not have discovered that the Orbic Policies did not list Plaintiff as an additional insured until receiving the denial of coverage letter from Starr in April of 2024.

140.    Plaintiff relied on the representations made by the Orbic Carriers and AJG, that Plaintiff was an additional insured under the Orbic Policies.

141.    If Plaintiff had discovered that the Orbic Policies did not list Plaintiff as an additional insured, Plaintiff would have either sought to reform the Orbic Policies at an earlier date or would have sought coverage elsewhere.

142.    Plaintiff would not have accepted, agreed to or authorized the issuance of the Orbic Policies if it knew at the time of placement the Orbic Policies did not list Plaintiff as an additional insured.

143.    Plaintiff is entitled to the benefits and proceeds from the insurance contracts as the parties intended.

144.    To reflect the true intent of the parties, Plaintiff shall be named as an additional insured on the Orbic Policies through the doctrine of reformation.

145.    The Orbic Carriers have refused to reform the policies, and have, instead, wrongfully and unreasonably refused to correct the policies to include coverage for Plaintiff as an additional insured as the parties intended.

146.    Plaintiff has therefore been injured by the failure of not naming Plaintiff as an additional insured under the Orbic Policies in that Plaintiff is exposed to liability in the Underlying Action without adequate coverage as was intended and bargained for by the parties.  Plaintiff's damages have yet to be ascertained but will be determined at trial according to proof.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

### ON THE FIRST AND SECOND CAUSES OF ACTION

1.    For compensatory damages according to proof, but in an amount within the jurisdiction of this Court;

2.    For attorney's fees and costs, according to proof;

### ON THE THIRD AND FOURTH CAUSES OF ACTION

3.    For compensatory damages according to proof, but in an amount within the jurisdiction of this Court;

4.    For attorney's fees and costs of suit in obtaining the benefits owed under the Policy, pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, according to proof;

5.    For punitive and exemplary damages according to proof;

### ON THE FIFTH CAUSE OF ACTION

6.    For a declaratory judgment that Defendant who issued the insurance Policy referred to in this Complaint must provide a complete defense to Plaintiff as to the claims asserted in the Action and to fully indemnify Plaintiff up to policy limits for any settlement, award or judgment;

### ON THE SIXTH CAUSE OF ACTION

7.    For damages according to proof;

8.    For attorneys' fees and costs, pursuant to the Tort of Another Doctrine, according to proof;

### ON THE SEVENTH CAUSE OF ACTION

9.    For reformation of the Orbic Policies to reflect the true intention of the parties that the policies provide coverage for Plaintiff as an additional insured;

1

## ON ALL CAUSES OF ACTION

2    10.    For costs of suit herein; and

3    11.    For all such other and further relief as the Court may deem just and proper.

4

5  Dated: March 5, 2025          **JOSEPH OLIVA & ASSOCIATES, P.C.**

6

7                 By:       */s/ Joseph L. Oliva*

                    Joseph L. Oliva, Esq.

8                   Matthew R. Toothacre, Esq.

                   Attorneys for Plaintiff,

9                   THE SEMLER COMPANIES/MALIBU, a

                   California Limited Partnership dba

10                 SADDLEROCK RANCH

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

32

**40**

EXHIBIT "A"

Case 2:25-cv-03808-HDV-RAO    Document 1-974    Filed 04/30/25    Page 35 of 124    Page
Electronically FILED by Superior Court of California, County of Los Angeles on 10/25/2023 11:29 AM Sherri R. Carter, Executive Officer/Clerk of Court, by K. Parenteau,Deputy Clerk
Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Mark Young

**PLD-PI-001**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Adam R. Lugo (SBN 302660)<br>STRASSBURG, GILMORE & WEI, LLP.<br>1250 E. Walnut St., Suite 136<br>Pasadena, CA 91106<br>TELEPHONE NO: (626)683-9933    FAX NO. *(Optional):* (626)683-9944<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiff Susan Hu | FOR COURT USE ONLY |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles |
| STREET ADDRESS: 111 N. Hill St. |
| MAILING ADDRESS: 111 N. Hill St. |
| CITY AND ZIP CODE: Los Angeles, CA 90012 |
| BRANCH NAME: Stanley Mosk Courthouse |

| |
|---|
| PLAINTIFF: Yaghoub Kermanshahi; Simin Korei; |
| DEFENDANT: Orbic Air, LLC.; Hosking Aviation, Inc.; Butterfly Floral and Event Design, Inc.; The Semler Companies/Malibu dba Saddlerock Ranch; and |
| ☑ DOES 1 TO  25, Inclusive; |

| | |
|---|---|
| **COMPLAINT—Personal Injury, Property Damage, Wrongful Death**<br>☐ **AMENDED** *(Number):*<br>**Type** *(check all that apply):*<br>☐ **MOTOR VEHICLE**   ☑ **OTHER** *(specify):* Premises Liability<br>☐ **Property Damage**   ☐ **Wrongful Death**<br>☑ **Personal Injury**   ☐ **Other Damages** *(specify):* | |
| **Jurisdiction** *(check all that apply):*<br>☐ **ACTION IS A LIMITED CIVIL CASE**<br>**Amount demanded**  ☐ **does not exceed $10,000**<br>  ☐ **exceeds $10,000, but does not exceed $25,000**<br>☑ **ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)**<br>☐ **ACTION IS RECLASSIFIED by this amended complaint**<br>  ☐ **from limited to unlimited**<br>  ☐ **from unlimited to limited** | CASE NUMBER:<br><br>22SMCV01974 |

1. **Plaintiff** *(name or names):* Yaghoub Kermanshahi; Simin Korei;
   alleges causes of action against **defendant** *(name or names):*
   Orbic Air, LLC.; Hosking Aviation, Inc.; Butterfly Floral and Event Design, Inc.; The Semler Companies/Malibu dba Saddlerock Ranch and DOES 1 to 25, Inclusive

2. This pleading, including attachments and exhibits, consists of the following number of pages: Seven (7)

3. Each plaintiff named above is a competent adult
   a. ☐ **except** plaintiff *(name):*
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify):*
      (5) ☐ other *(specify):*
   b. ☐ **except** plaintiff *(name):*
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify):*
      (5) ☐ other *(specify):*

   ☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-PI-001 [Rev. January 1, 2007] | **COMPLAINT—Personal Injury, Property<br>Damage, Wrongful Death** | Code of Civil Procedure, § 425.12<br>www.courtinfo.ca.gov |

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Kermanshahi v. Orbic Air, LLC., et al. | |

4. ☐ Plaintiff *(name)*:

is doing business under the fictitious name *(specify)*:

and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

a. ☑ **except** defendant *(name)*: Orbic Air, LLC.
   (1) ☐ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☐ a public entity *(describe)*:

   (5) ☑ other *(specify)*:

   Limited Liability Company

b. ☑ **except** defendant *(name)*: Hosking Aviation, Inc.
   (1) ☐ a business organization, form unknown
   (2) ☑ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☐ a public entity *(describe)*:

   (5) ☐ other *(specify)*:

c. ☑ **except** defendant *(name)*: Butterfly Floral and Event Design, Inc.
   (1) ☐ a business organization, form unknown
   (2) ☑ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☐ a public entity *(describe)*:

   (5) ☐ other *(specify)*:

d. ☑ **except** defendant *(name)*: The Semler Companies/Malibu dba Saddlerock Ranch
   (1) ☐ a business organization, form unknown
   (2) ☑ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☐ a public entity *(describe)*:

   (5) ☐ other *(specify)*:

☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.

a. ☑ Doe defendants *(specify Doe numbers)*: 1-15 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.

b. ☑ Doe defendants *(specify Doe numbers)*: 16-25 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names)*:

8. This court is the proper court because

a. ☐ at least one defendant now resides in its jurisdictional area.
b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
c. ☑ injury to person or damage to personal property occurred in its jurisdictional area.
d. ☐ other *(specify)*:

9. ☐ Plaintiff is required to comply with a claims statute, **and**
a. ☐ has complied with applicable claims statutes, **or**
b. ☐ is excused from complying because *(specify)*:

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Kermanshahi v. Orbic Air, LLC., et al. | |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
    a. ☐ Motor Vehicle
    b. ☑ General Negligence
    c. ☐ Intentional Tort
    d. ☑ Products Liability
    e. ☑ Premises Liability
    f. ☑ Other *(specify):*

       Loss of Consortium

11. Plaintiff has suffered
    a. ☑ wage loss
    b. ☑ loss of use of property
    c. ☑ hospital and medical expenses
    d. ☑ general damage
    e. ☑ property damage
    f. ☑ loss of earning capacity
    g. ☐ other damage *(specify):*

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
    a. ☐ listed in Attachment 12.
    b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
    a. (1) ☑ compensatory damages
       (2) ☐ punitive damages
    The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
    (1) ☑ according to proof
    (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*

Date: October 24, 2022

Adam R. Lugo, Esq.
_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001(4)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Kermanshahi v. Orbic Air, LLC., et al. | |

One (1) _____ **CAUSE OF ACTION—Premises Liability** Page Four (4)
    (number)

ATTACHMENT TO ☑ Complaint ☐ Cross - Complaint
*(Use a separate cause of action form for each cause of action.)*

Prem.L-1. Plaintiff *(name):* Yaghoub Kermanshahi
alleges the acts of defendants were the legal (proximate) cause of damages to plaintiff.
On *(date):* May 20, 2021      plaintiff was injured on the following premises in the following
fashion *(description of premises and circumstances of injury):*

Plaintiff Yaghoub Kermanshahi was an invited guest at Defendant The Sempler
Companies/Malibu for a wedding. During the event, a helicopter arranged for the wedding flew
over at a low altitude to drop flower pedals. The helicopter caused an unsecured structure to
fall and strike Plaintiff in the head, causing severe injuries.

Prem.L-2. ☑ **Count One—Negligence** The defendants who negligently owned, maintained, managed and
operated the described premises were *(names):*
Butterfly Floral and Event Design, Inc.; The Semler Companies/Malibu dba Saddlerock
Ranch
☑ Does 1 _____ to 25 _____

Prem.L-3. ☑ **Count Two—Willful Failure to Warn** [Civil Code section 846] The defendant owners who willfully
or maliciously failed to guard or warn against a dangerous condition, use, structure, or activity were
*(names):*
Butterfly Floral and Event Design, Inc.; The Semler Companies/Malibu dba Saddlerock
Ranch
☑ Does 1 _____ to 25 _____
Plaintiff, a recreational user, was ☐ an invited guest ☐ a paying guest.

Prem.L-4. ☐ **Count Three—Dangerous Condition of Public Property** The defendants who owned public property
on which a dangerous condition existed were *(names):*

☐ Does _____ to _____

a. ☐ The defendant public entity had ☐ actual ☐ constructive notice of the existence of the
dangerous condition in sufficient time prior to the injury to have corrected it.
b. ☐ The condition was created by employees of the defendant public entity.

Prem.L-5. a. ☑ **Allegations about Other Defendants** The defendants who were the agents and employees of the
other defendants and acted within the scope of the agency were *(names):*
Orbic Air, LLC.; Hosking Aviation, Inc.; Butterfly Floral and Event Design, Inc.; The
Semler Companies/Malibu dba Saddlerock Ranch
☑ Does 1 _____ to 25 _____

b. ☐ The defendants who are liable to plaintiffs for other reasons and the reasons for their liability are
☐ described in attachment Prem.L-5.b ☐ as follows *(names):*

Page 1 of 1

PLD-PI-001(2)

| SHORT TITLE:<br>Kermanshahi v. Orbic Air, LLC., et al. | CASE NUMBER: |
|---|---|

Two (2) _____     **CAUSE OF ACTION—General Negligence**     Page   Five (5) _____

     (number)

ATTACHMENT TO   [ x ] Complaint    [   ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):* Yaghoub Kermanshahi

    alleges that defendant *(name):*

      [ x ] Does    1 _____    to   25 _____

    was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff

    on *(date):* May 20, 2021

    at *(place):* 31727 Mulholland Highway, Malibu, CA 90265

    *(description of reasons for liability):*
        Plaintiff Yaghoub Kermanshahi was an invited guest at Saddlerock Ranch for a wedding. Defendant The Sempler Companies/Malibu owns, controls, and maintains the location of the event.
        At the wedding, a wooden archway was designed, constructed, installed, and maintained by Defendant Butterfly Floral and Event Design, Inc.
        During the event, a helicopter arranged for the wedding flew over at a low altitude to drop flower pedals. Based on information and belief, the helicopter was operated and owned by Defendants Orbic Air, LLC. and Hosking Aviation, Inc. at the time of the incident.
        As a result of the helicopter's low altitude pass over the wedding, it caused the unsecured wooden archway to fall and strike Plaintiff in the head, causing severe injuries.

Form Approved for Optional Use<br>Judicial Council of California<br>PLD-PI-001(2) [Rev. January 1, 2007]

**CAUSE OF ACTION—General Negligence**

Code of Civil Procedure 425.12<br>www.courts.ca.gov

PLD-PI-001(5)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Kermanshahi v. Orbic Air, LLC., et al. | |

Three (3)     **CAUSE OF ACTION—Products Liability**    Page   Six (6)

(number)

ATTACHMENT TO ☑ Complaint ☐ Cross - Complaint
*(Use a separate cause of action form for each cause of action.)*

Plaintiff *(name):* Yaghoub Kermanshahi

**Prod. L-1.** On or about *(date):* May 20, 2021       plaintiff was injured by the following product:

A wooden archway manufactured, designed, and/or sold by Defendant Butterfly Floral and Event Design, Inc.

**Prod. L-2.** Each of the defendants knew the product would be purchased and used without inspection for defects. The product was defective when it left the control of each defendant. The product at the time of injury was being

☐ used in the manner intended by the defendants.

☑ used in the manner that was reasonably foreseeable by defendants as involving a substantial danger not readily apparent. Adequate warnings of the danger were not given.

**Prod. L-3.** Plaintiff was a

☐ purchaser of the product.       ☐ user of the product.

☑ bystander to the use of the product.     ☐ other *(specify):*

**PLAINTIFF'S INJURY WAS THE LEGAL (PROXIMATE) RESULT OF THE FOLLOWING:**

**Prod. L- 4.** ☑ **Count One—Strict liability** of the following defendants who

a. ☑ manufactured or assembled the product *(names):*

Defendant Butterfly Floral and Event Design, Inc.

☑ Does 1       to 25

b. ☑ designed and manufactured component parts supplied to the manufacturer *(names):*

Defendant Butterfly Floral and Event Design, Inc.

☑ Does 1       to 25

c. ☑ sold the product to the public *(names):*

Defendant Butterfly Floral and Event Design, Inc.

☑ Does 1       to 25

**Prod. L-5.** ☑ **Count Two—Negligence** of the following defendants who owed a duty to plaintiff *(names):*

Defendant Butterfly Floral and Event Design, Inc.

☑ Does 1       to 25

**Prod. L-6.** ☑ **Count Three—Breach of warranty** by the following defendants *(names):*

Defendant Butterfly Floral and Event Design, Inc.

☑ Does 1       to 25

a. ☑ who breached an implied warranty

b. ☐ who breached an express warranty which was

☐ written ☐ oral

**Prod. L-7.** ☐ The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are

☐ listed in Attachment-Prod. L-7 ☐ as follows:

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(5) [Rev. January 1, 2007]

**CAUSE OF ACTION—Products Liability**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Kermanshahi v. Orbic Air, LLC., et al. | |

**ATTACHMENT** *(Number):*  Four (4)

*(This Attachment may be used with any Judicial Council form.)*

## CAUSE OF ACTION FOUR: LOSS OF CONSORTIUM
### By Plaintiffs Yaghoub Kermanshahi and Simin Korei as against All Defendants

Plaintiffs Yaghoub Kermanshahi and Simin Korei are lawfully married and were so married at the time of the incident.

Plaintiff Yaghoub Kermanshahi was injured as a result of the negligence of Defendants, and each of them.

Plaintiff Simin Korei seeks recovery for loss of consortium for the loss of Plaintiff Yaghoub Kermanshahi's love, companionship, comfort, care, assistance, protection, affection, society, moral support, and the loss of enjoyment of sexual relations.

---

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page  7  of  7

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

# EXHIBIT "B"

Electronically Received 12/07/2023 03:32 PM

JUSTIN K. STRASSBURG - SBN 238504
ADAM R. LUGO - SBN 302660
**STRASSBURG, GILMORE & WEI, LLP**
1250 E. Walnut St., Ste. #136
Pasadena, California 91106
Telephone: (626) 683-9933
Facsimile: (626) 683-9944

Attorneys for Plaintiffs,
Yaghoub Kermanshahi and Simin Korei

**FILED**
Superior Court of California
County of Los Angeles
**12/07/2023**
David W. Slayton, Executive Officer / Clerk of Court
By: _____ E. Sam _____ Deputy

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| Yaghoub Kermanshahi; Simin Korei;<br><br>Plaintiffs,<br><br>v.<br><br>Orbic Air, LLC.; Hosking Aviation, Inc.; Butterfly Floral and Event Design, Inc.; The Semler Companies/Malibu dba Saddlerock Ranch; and DOES 1 to 25, Inclusive;<br><br>Defendants. | CASE NO.:  22SMCV01974<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>  1. Wrongful Death and Survivorship<br>  2. Negligent Infliction of Emotional Distress<br>  3. Loss of Consortium<br><br>**DEMAND FOR JURY TRIAL** |

COME NOW Plaintiff, SIMIN KOREI, individually and as successor-in-interest to the estate of her husband Decedent YAGHOUB KERMANSHAHI under the provisions of <u>Code of Civil Procedure</u> Sections 377.60, 337.35 and 337.30 for causes of action against Defendants, Orbic Air, LLC., Hosking Aviation, Inc., Butterfly Floral and Event Design, Inc. The Semler Companies/Malibu dba Saddlerock Ranch, and DOES 1 to 25, inclusive, and complain and allege as follows:

1

**FIRST AMENDED COMPLAINT FOR DAMAGES**

## GENERAL ALLEGATIONS

### (By all Plaintiffs against all Defendants)

1.      At all times herein relevant, Decedent Plaintiff YAGHOUB KERMANSHAHI (hereinafter "Decedent KERMANSHAHI") was a resident of Los Angeles County, State of California.

2.      At all times herein relevant, Plaintiff SIMIN KOREI (hereinafter "Plaintiff KOREI") is a resident of Los Angeles County, State of California and the wife of Plaintiff KERMANSHAHI.

3.      At all times relevant herein, Defendant ORBIC AIR, LLC (hereinafter "Defendant ORBIC") was and is a corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles County.

4.      At all times relevant herein, Defendant HOSKING AVIATION, INC. (hereinafter "Defendant HOSKING") was and is a corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles County.

5.      At all times relevant herein, Defendant BUTTERFLY FLORAL AND EVENT DESIGN, INC. (hereinafter "Defendant BUTTERFLY") was and is a corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles County.

6.      At all times relevant herein, Defendant THE SEMLER COMPANIES/MALIBU dba SADDLEROCK RANCH (hereinafter "Defendant SADDLEROCK") was and is a corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles County.

DOE ALLEGATIONS:

7.      At all relevant times, Defendants DOES 1 through 25, and each of them, were individuals, corporations, partnerships, and/or associations residing in and/or authorized to and/or doing business in the State of California.

8.      The true names and/or capacities, whether individual, corporate, associate, governmental or otherwise of Defendants DOES 1 through 25, inclusive, and each of them are unknown to Plaintiffs, who therefore sue those defendants by such fictitious names.  When the true

names and/or capacities of these currently unknown defendants are ascertained, Plaintiffs will amend the Complaint accordingly

9.    Plaintiffs are informed and believe, and based thereon allege, that each defendant designated herein as a DOE was responsible, negligently or in some other actionable manner, for the events and happenings herein referred to which legally caused the damages to Plaintiffs as hereinafter alleged, either through said defendant's own negligence or through the conduct of its agents, servants, employees or representatives in some other manner.

10.    Plaintiffs are informed and believe, and based thereon allege, that at all relevant times each of the defendants, including Defendants DOES 1 through 25, inclusive, were the agents, servants, employees, representatives of each of the remaining defendants and were at all times material hereto acting within the authorized course and scope of said agency, service, employment and/or representation, and/or that all of said acts, conduct and omissions were subsequently ratified by their respective principals and the benefits thereof accepted by such principals.

## STATEMENT OF FACTS

### (Material to All Causes of Action)

11.    On May 30, 2021, Decedent KERMANSHAHI and Plaintiff KOREI were invited guests as a wedding that was being held at Defendant SADDLEROCK. During the event, a helicopter arranged through Defendants ORBIC AND HOSKING flew over the wedding at a low altitude to drop flower pedals. The helicopter caused an unsecured structure created by Defendant BUTTERFLY to fall and strike Decedent KERMANSHAHI in the head causing severe injuries. Plaintiff KOREI is the wife of Decedent KERMANSHAHI and was present during the event and witness the injury to her husband.

12.    As a result of the Subject Incident, Decedent KERMANSHAHI suffered from severe and permanent injuries, which include but are not limited to, traumatic brain injury with hematoma, neck injury, lower back injury, and right hip injury. Unfortunately, due to the extent of Decedent KERMANSHAHI injuries, he succumbed to his injuries and died on May 15, 2023.

13.    Plaintiff KOREI suffered severe emotional distress as she was present and witnessed the incident that caused the severe injuries to her then husband Decedent KERMANSHAHI.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

14.     Plaintiff KOREI is the sole heir of Decedent KERMANSHAHI and successor in interest to the estate of Decedent KERMANSHAHI. As a result of Defendants' negligence, each of them, Plaintiff KOREI has suffered damages as a result of her husband's wrongful death.

## FIRST CAUSE OF ACTION

### (Wrongful Death and Survivorship by Plaintiff KOREI As Against All Defendants)

15.     Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action in this Complaint, inclusive, as though fully set forth herein.

16.     As a direct and proximate result of the aforesaid conduct of Defendants, and each of them, Decedent KERMANSHAHI, before his death, suffered extreme pain and suffering, general damage, and emotional distress. Decedent KERMANSHAHI did not die immediately and suffered significantly in the time leading up to his death.

17.     Plaintiff KOREI is the sole heir of Decedent KERMANSHAHI.

18.     The damages claimed for survivorship and wrongful death are as follows:

a. Plaintiff KOREI, individually and on behalf of the Estate of Decedent KERMANSHAHI, sue as a personal representative and/or successor in interest under Code of Civil Procedure section 377.30, and claims all damages permitted by Code of Civil Procedure section 377.34, to be proven at time of trial; and

b. Plaintiff KOREI, individually and on behalf of the Estate of Decedent KERMANSHAHI, pursuant to Code of Civil Procedure section 377.60, has incurred liability for medical expenses of Decedent KERMANSHAHI, funeral and burial expenses, and has sustained noneconomic injuries, including but not limited to, loss of love, affection, comfort, care, companionship, society, moral support, training, guidance, and support of her beloved husband, as well as loss of financial support that Decedent KERMANSHAHI would have contributed during his life and the reasonable value of household services Decedent KERMANSHAHI would have provided.

c. Plaintiff KOREI, individually and on behalf of the Estate of Decedent KERMANSHAHI, pursuant to <u>Code of Civil Procedure</u> section 377.60, claims all other damages permitted by <u>Code of Civil Procedure</u> section 377.61.

d. Plaintiff KOREI, individually and on behalf of the Estate of Decedent KERMANSHAHI, further suffered loss of the reasonable pecuniary value of future earnings of Decedent KERMANSHAHI, and will continue to incur such liability and sustain such damages for an indefinite time in the future, all to their general damages and amounts according to proof at trial.

19.    WHEREFORE, Plaintiff KOREI prays for judgment against Defendants, and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

**(Negligent Infliction of Emotional Distress by Plaintiff KOREI As Against All Defendants)**

20.    Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action in this Complaint, inclusive, as though fully set forth herein.

21.    At the time of the Subject Incident giving rise to this Complaint and up to Decedent KERMANSHAHI's death, Plaintiff KOREI was the wife of Decedent KERMANSHAHI.

22.    Plaintiff KOREI was present for the subject incident, and as a result of the acts and omissions of Defendants, and each of them, contemporaneously observed immediate resulting injuries to her then husband Decedent KERMANSHAHI.

23.    As a direct and proximate result of contemporaneously observing these injury causing events to her husband, Decedent KERMANSHAHI, Plaintiff KOREI suffered serious emotional distress and trauma far beyond that which would be anticipated in a disinterested witness, and continue to suffer anxiety, nervousness, depression, and severe emotional distress that will require treatment and counseling.

24.    The negligence of Defendants, and each of them, was a substantial factor in causing Plaintiff KOREI serious emotional distress.

**54**

25.     The serious emotional distress suffered by Plaintiff KOREI was a foreseeable result of Defendants' negligence.

## THIRD CAUSE OF ACTION

### (Loss of Consortium by Plaintiff KOREI As Against All Defendants)

26.     Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action in this Complaint, inclusive, as though fully set forth herein.

27.     At the time of the Subject Incident giving rise to this Complaint and up to Decedent KERMANSHAHI's death, Plaintiff KOREI was the wife of Decedent KERMANSHAHI.

28.     Due to the injuries sustained by Decedent KERMANSHAHI, Plaintiff KOREI has lost, including but not limited to, the support, services, love, companionship, affection, society, sexual relations, and/or solace of each other.

29.     As a direct and proximate result of the injuries sustained by Decedent KERMANSHAHI, Plaintiff KOREI has suffered a loss of, including but not limited to, the support, services, love, companionship, affection, society, sexual relations, and/or solace of each other that will require treatment and counseling.

30.     The negligence of Defendants, and each of them, was a substantial factor in causing Plaintiff KOREI's loss of consortium.

31.     The loss of consortium suffered by Plaintiff KOREI was a foreseeable result of Defendants' negligence.

## PRAYER

**WHEREFORE**, Plaintiffs pray judgment against Defendants, Orbic Air, LLC., Hosking Aviation, Inc., Butterfly Floral and Event Design, Inc. The Semler Companies/Malibu dba Saddlerock Ranch, and DOES 1 to 25, inclusive as follows:

1.     For general damages (also known as non-economic damages), including but not limited to, past and future pain and suffering, disfigurement, and emotional distress in an amount in excess of the jurisdictional minimum, according to proof;

2.     For special damages (also known as economic damages), including but not limited to,

**FIRST AMENDED COMPLAINT FOR DAMAGES**

past and future hospital, medical, professional, and incidental expenses, in excess of the jurisdictional minimum, according to proof;

3.  For damages to property and economic damage related thereto, according to proof;

4.  For damages related to the wrongful death and survivorship of Decedent KERMANSHAHI;

5.  For all loss of earnings, past and future, according to proof;

6.  For prejudgment interest, according to proof;

7.  For fees and costs of suit incurred herein, according to proof;

8.  For such other and further relief as the Court may deem just and proper.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs pray for a judgment consistent with the requested Prayer.

Respectfully submitted:

Dated: December 07, 2023          By: _____
                                      ADAM R. LUGO
                                      Attorney for Plaintiffs
                                      YAGHOUB KERMANSHAHI and SIMIN KOREI

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury as to all Causes of Action and/or claims for relief alleged in, and on all issues raised by, this Complaint.

Dated: December 07, 2023          By: _____
                                      ADAM R. LUGO
                                      Attorney for Plaintiff:
                                      YAGHOUB KERMANSHAHI and SIMIN KOREI

**56**

**FIRST AMENDED COMPLAINT FOR DAMAGES**

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1250 E. Walnut Ave., Ste #136, Pasadena, CA 91106.

On December 07, 2023 I served the foregoing document(s) described as

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

SEE ATTACHED SERVICE LIST

☐  **(BY MAIL)** I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒  **(ONLY BY ELECTRONIC TRANSMISSION)** Only by emailing the document(s) listed above to the parties in this action using the email addresses identified on the attached Service List. During the period of National Emergency declared pursuant to the COVID-19 pandemic, as well as the Orders of the Governor of California and Mayor of Los Angeles, physical work in this office will cease, and electronic mail will be the preferred method of communication. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission. We will provide a physical copy, on request only, upon a return to the office and the conclusion of the National Emergency and the above referenced Orders.

☐  **(BY FACSIMILE)** I served by facsimile a true copy of the above-described document.  I am "readily familiar" with this firm's practice of processing correspondence by fax.  Under that practice documents are placed in our fax machine and are processed and received simultaneously at their destination.  The above-referenced document(s) was placed in the fax machine with all costs of faxing prepaid, directed to each party (using their fax number), listed on the attached Service List.  Once the document has been transmitted, the fax machine provides a report indicating time of completion.

☐  **(BY PERSONAL SERVICE)** I delivered such envelope(s) by hand to the offices of the addressee(s).

☒  (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the above is true and correct.

Executed on  December 07, 2023, at Pasadena, California.

Nicole Gatmaitan_____          _____
Type or Print Name                                              Signature

1

## SERVICE LIST

2

3    Michael J. Terhar , Esq.                 *Attorneys for Defendant*
   Jonathan E. Hembree, Esq.            Orbic Air, LLC

4    Carl Basile, Esq.
   CUNNINGHAM SWAIM, LLP

5    2 North Lake Avenue, Suite 550
   Pasadena, California 91101

6    Telephone: (626) 765-3000

7    Facsimile: (626) 765-3030
   Email: mterhar@cunninghamswaim.com

8    jhembree@cunninghamswaim.com
   cbasile@cunninghamswaim.com

9    cvivanco@cunninghamswaim.com

10

11    Heather L. Mills, Esq.              *Attorneys for Defendant*
   Robert B. Salgado, Esq.          The Semler Companies/Malibu Dba

12    SKANE MILLS LLP             Saddlerock Ranch
   550 South. Hope St., Suite 410

13    Los Angeles, CA 90071 T:
   (213) 452-1200

14    F: (213) 452-1201

15    hmills@skanemills.com
   rsalgado@skanemills.com

16    mmason@skanemills.com
   ibouffard@skanemills.com

17    Ted R. Crisler, Esq.              *Attorneys for Defendant*
   Law Office of Eric G. Anderson     Butterfly Floral and Event Design, Inc.

18    1851 E 1st St., Ste. 750
   Santa Ana, CA 92705

19    Mailing Address
   P.O. Box 94743

20    Chicago, IL 60690
   Email: Ted.Crisler@cna.com

21    CNASCalifornia@CNA.com

22    Doug Griffith, Esq.
   VICTOR RANE              Attorneys for Defendant

23    9350 Wilshire Boulevard, Suite 308   HOSKING AVIATION, INC.
   Beverly Hills, CA 90212

24    Tel: (818) 919-8541
   Fax: (213) 814-4530 Email:

25    dgriffith@victorrane.com
   wharden@victorrane.com

26

27

28

**FIRST AMENDED COMPLAINT FOR DAMAGES**        **58**

# EXHIBIT "C"

1  JUSTIN K. STRASSBURG - SBN 238504
   ADAM R. LUGO - SBN 302660
2  **STRASSBURG, GILMORE & WEI, LLP**
   1250 E. Walnut St., Ste. #136
3  Pasadena, California 91106
   Telephone: (626) 683-9933
4  Facsimile: (626) 683-9944

5

6  Attorneys for Plaintiffs,
   Simin Korei, individually and as successor to the estate of Yaghoub Kermanshahi; Sahel
7  Kermanshahi; and Saman Kermanshahi

8            **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

9               **FOR THE COUNTY OF LOS ANGELES**

10

11  Simin Korei, Individually and as Successor to the      CASE NO.:  22SMCV01974
    Estate of Yaghoub Kermanshahi; Sahel
12  Kermanshahi, Individually; and Saman
    Kermanshahi, Individually;
13                                                          **SECOND AMENDED COMPLAINT**
                    Plaintiffs,                             **FOR DAMAGES**
14
    v.                                                         1. Negligence - Wrongful Death
15                                                             2. Survivorship
                                                               3. Loss of Consortium
16  Orbic Air, LLC.; Hosking Aviation, Inc.;
    Butterfly Floral and Event Design, Inc.; The            **DEMAND FOR JURY TRIAL**
17  Semler Companies/Malibu dba Saddlerock
    Ranch; and DOES 1 to 25, Inclusive;
18
                    Defendants.
19

20

21

22

23  COME NOW Plaintiffs, SIMIN KOREI, individually and as successor-in-interest to the estate of her

24  husband Decedent YAGHOUB KERMANSHAHI under the provisions of <u>Code of Civil Procedure</u>

25  Sections 377.60, 337.35 and 337.30, SAHEL KERMANSHAHI, Individually, and SAMAN

26  KERMANSHAHI, Individually, for causes of action against Defendants, Orbic Air, LLC., Hosking

27  Aviation, Inc., Butterfly Floral and Event Design, Inc. The Semler Companies/Malibu dba

28  Saddlerock Ranch, and DOES 1 to 25, inclusive, and complain and allege as follows:

                                                    **60**

## GENERAL ALLEGATIONS

### (By all Plaintiffs against all Defendants)

1.    At all times herein relevant, Decedent Plaintiff YAGHOUB KERMANSHAHI (hereinafter "Decedent KERMANSHAHI") was a resident of Los Angeles County, State of California.

2.    At all times herein relevant, Plaintiff SIMIN KOREI (hereinafter "Plaintiff KOREI") is a resident of Los Angeles County, State of California and the wife of Decedent KERMANSHAHI.

3.    At all times herein relevant, Plaintiff SAHEL KERMANSHAHI (hereinafter "Plaintiff SAHEL") is a resident of Los Angeles County, State of California and the natural daughter of Decedent KERMANSHAHI.

4.    At all times herein relevant, Plaintiff SAMAN KERMANSHAHI (hereinafter "Plaintiff SAMAN") is a resident of Los Angeles County, State of California and the son of Decedent f KERMANSHAHI.

5.    At all times relevant herein, Defendant ORBIC AIR, LLC (hereinafter "Defendant ORBIC") was and is a corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles County.

6.    At all times relevant herein, Defendant HOSKING AVIATION, INC. (hereinafter "Defendant HOSKING") was and is a corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles County.

7.    At all times relevant herein, Defendant BUTTERFLY FLORAL AND EVENT DESIGN, INC. (hereinafter "Defendant BUTTERFLY") was and is a corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles County.

8.    At all times relevant herein, Defendant THE SEMLER COMPANIES/MALIBU dba SADDLEROCK RANCH (hereinafter "Defendant SADDLEROCK") was and is a corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles County.

//

**61**

**SECOND AMENDED COMPLAINT FOR DAMAGES**

DOE ALLEGATIONS:

9.    At all relevant times, Defendants DOES 1 through 25, and each of them, were individuals, corporations, partnerships, and/or associations residing in and/or authorized to and/or doing business in the State of California.

10.    The true names and/or capacities, whether individual, corporate, associate, governmental or otherwise of Defendants DOES 1 through 25, inclusive, and each of them are unknown to Plaintiffs, who therefore sue those defendants by such fictitious names.  When the true names and/or capacities of these currently unknown defendants are ascertained, Plaintiffs will amend the Complaint accordingly

11.    Plaintiffs are informed and believe, and based thereon allege, that each defendant designated herein as a DOE was responsible, negligently or in some other actionable manner, for the events and happenings herein referred to which legally caused the damages to Plaintiffs as hereinafter alleged, either through said defendant's own negligence or through the conduct of its agents, servants, employees or representatives in some other manner.

12.    Plaintiffs are informed and believe, and based thereon allege, that at all relevant times each of the defendants, including Defendants DOES 1 through 25, inclusive, were the agents, servants, employees, representatives of each of the remaining defendants and were at all times material hereto acting within the authorized course and scope of said agency, service, employment and/or representation, and/or that all of said acts, conduct and omissions were subsequently ratified by their respective principals and the benefits thereof accepted by such principals.

## STATEMENT OF FACTS

**(Material to All Causes of Action)**

13.    On May 30, 2021, Decedent KERMANSHAHI and Plaintiff KOREI were invited guests as a wedding that was being held at Defendant SADDLEROCK. During the event, a helicopter arranged through Defendants ORBIC AND HOSKING flew over the wedding at a low altitude to drop flower pedals. The helicopter caused an unsecured structure created by Defendant BUTTERFLY to fall and strike Decedent KERMANSHAHI in the head causing severe injuries.

1  Plaintiff KOREI is the wife of Decedent KERMANSHAHI and was present during the event and

2  witness the injury to her husband.

3      14.    As a result of the Subject Incident, Decedent KERMANSHAHI suffered from severe

4  and permanent injuries, which include but are not limited to, traumatic brain injury with hematoma,

5  neck injury, lower back injury, and right hip injury. Unfortunately, due to the extent of Decedent

6  KERMANSHAHI injuries, he succumbed to his injuries and died on May 15, 2023.

7      15.    Plaintiff KOREI suffered severe emotional distress as she was present and witnessed

8  the incident that caused the severe injuries to her then husband Decedent KERMANSHAHI.

9      16.    Plaintiffs KOREI, SAHEL, and SAMAN are the sole heirs of Decedent

10  KERMANSHAHI and successors in interest to the estate of Decedent KERMANSHAHI. As a result

11  of Defendants' negligence, each of them, Plaintiffs KOREI, SAHEL, and SAMAN have suffered

12  damages as a result of Decedent KERMANSHAHI's wrongful death.

13  **<u>FIRST CAUSE OF ACTION</u>**

14  **(Negligence - Wrongful Death by Plaintiffs KOREI, SAHEL, and SAMAN As Against All**

15  **Defendants)**

16      17.    Plaintiffs re-allege and reincorporate each and every allegation contained in the

17  General Allegations and all previous paragraphs of all previous Causes of Action in this Complaint,

18  inclusive, as though fully set forth herein.

19      18.    Decedent KERMANSHAHI was an invited guest at Saddlerock Ranch for a wedding.

20  Defendant The Sempler Companies/Malibu owns, controls, and maintains the location of the event.

21      19.    At the wedding, a wooden archway was designed, constructed, installed, and

22  maintained by Defendant Butterfly Floral and Event Design, Inc.

23      20.    During the event, a helicopter arranged for the wedding flew over at a low altitude to

24  drop flower pedals. Based on information and belief, the helicopter was operated and owned by

25  Defendants Orbic Air, LLC. and Hosking Aviation, Inc. at the time of the incident.

26      21.    As a result of the Defendants negligence, and each of them, the unsecured wooden

27  archway fell and struck Decedent KERMANSHAHI in the head, causing severe injuries.

28

4

**SECOND AMENDED COMPLAINT FOR DAMAGES**

22.    Unfortunately, due to the extent of Decedent KERMANSHAHI injuries, he succumbed to his injuries and died on May 15, 2023.

23.    Plaintiffs KOREI, SAHEL, and SAMAN are the sole heirs of Decedent KERMANSHAHI.

24.    The damages claimed for survivorship and wrongful death are as follows:

    a.    Plaintiff KOREI, individually and on behalf of the Estate of Decedent KERMANSHAHI, and Plaintiffs SAHEL and SAMAN, Individually, sue as the personal representatives and/or successors in interest under Code of Civil Procedure section 377.30, and claims all damages permitted by Code of Civil Procedure section 377.34, to be proven at time of trial; and

    b.    Plaintiff KOREI, individually and on behalf of the Estate of Decedent KERMANSHAHI, and Plaintiffs SAHEL and SAMAN, Individually, pursuant to Code of Civil Procedure section 377.60, have incurred liability for medical expenses of Decedent KERMANSHAHI, funeral and burial expenses, and has sustained noneconomic injuries, including but not limited to, loss of love, affection, comfort, care, companionship, society, moral support, training, guidance, and support of their beloved husband and father, as well as loss of financial support that Decedent KERMANSHAHI would have contributed during his life and the reasonable value of household services Decedent KERMANSHAHI would have provided.

    c.    Plaintiff KOREI, individually and on behalf of the Estate of Decedent KERMANSHAHI, and Plaintiffs SAHEL and SAMAN, Individually, pursuant to Code of Civil Procedure section 377.60, claims all other damages permitted by Code of Civil Procedure section 377.61.

    d.    Plaintiff KOREI, individually and on behalf of the Estate of Decedent KERMANSHAHI, and Plaintiffs SAHEL and SAMAN, Individually, further suffered loss of the reasonable pecuniary value of future earnings of Decedent KERMANSHAHI, and will continue to incur such liability and sustain such

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1  damages for an indefinite time in the future, all to their general damages and
2  amounts according to proof at trial.

3  25.    WHEREFORE, Plaintiffs KOREI, SAHEL, and SAMAN prays for judgment against
4  Defendants, and each of them, as hereinafter set forth.

5  **SECOND CAUSE OF ACTION**

6  **(Survivorship by Plaintiff KOREI As Against All Defendants)**

7  26.    Plaintiffs re-allege and reincorporate each and every allegation contained in the
8  General Allegations and all previous paragraphs of all previous Causes of Action in this Complaint,
9  inclusive, as though fully set forth herein.

10  27.    Decedent KERMANSHAHI was an invited guest at Saddlerock Ranch for a wedding.
11  Defendant The Sempler Companies/Malibu owns, controls, and maintains the location of the event.

12  28.    At the wedding, a wooden archway was designed, constructed, installed, and
13  maintained by Defendant Butterfly Floral and Event Design, Inc.

14  29.    During the event, a helicopter arranged for the wedding flew over at a low altitude to
15  drop flower pedals. Based on information and belief, the helicopter was operated and owned by
16  Defendants Orbic Air, LLC. and Hosking Aviation, Inc. at the time of the incident.

17  30.    As a result of the Defendants negligence, and each of them, the unsecured wooden
18  archway fell and struck Decedent KERMANSHAHI in the head, causing severe injuries.

19  31.    Unfortunately, due to the extent of Decedent KERMANSHAHI injuries, he
20  succumbed to his injuries and died on May 15, 2023.

21  32.    As a direct and proximate result of the aforesaid conduct of Defendants, and each of
22  them, Decedent KERMANSHAHI, before his death, suffered extreme pain and suffering, general
23  damage, and emotional distress. Decedent KERMANSHAHI did not die immediately and suffered
24  significantly in the time leading up to his death.

25  //
26  //
27  //
28  //

6

**65**

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**THIRD CAUSE OF ACTION**

**(Loss of Consortium by Plaintiff KOREI As Against All Defendants)**

33.    Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action in this Complaint, inclusive, as though fully set forth herein.

34.    At the time of the Subject Incident giving rise to this Complaint and up to Decedent KERMANSHAHI's death, Plaintiff KOREI was the wife of Decedent KERMANSHAHI.

35.    Due to the injuries sustained by Decedent KERMANSHAHI, Plaintiff KOREI has lost, including but not limited to, the support, services, love, companionship, affection, society, sexual relations, and/or solace of each other.

36.    As a direct and proximate result of the injuries sustained by Decedent KERMANSHAHI, Plaintiff KOREI has suffered a loss of, including but not limited to, the support, services, love, companionship, affection, society, sexual relations, and/or solace of each other that will require treatment and counseling.

37.    The negligence of Defendants, and each of them, was a substantial factor in causing Plaintiff KOREI's loss of consortium.

38.    The loss of consortium suffered by Plaintiff KOREI was a foreseeable result of Defendants' negligence.

**PRAYER**

**WHEREFORE**, Plaintiffs KOREI, SAHEL, and SAMAN pray judgment against Defendants, Orbic Air, LLC., Hosking Aviation, Inc., Butterfly Floral and Event Design, Inc. The Semler Companies/Malibu dba Saddlerock Ranch, and DOES 1 to 25, inclusive as follows:

1.    For general damages (also known as non-economic damages), including but not limited to, past and future pain and suffering, disfigurement, and emotional distress in an amount in excess of the jurisdictional minimum, according to proof;

2.    For special damages (also known as economic damages), including but not limited to, past and future hospital, medical, professional, and incidental expenses, in excess of the jurisdictional minimum, according to proof;

**SECOND AMENDED COMPLAINT FOR DAMAGES**

3.    For damages to property and economic damage related thereto, according to proof;

4.    For damages related to the wrongful death and survivorship of Decedent KERMANSHAHI;

5.    For all loss of earnings, past and future, according to proof;

6.    For prejudgment interest, according to proof;

7.    For fees and costs of suit incurred herein, according to proof;

8.    For such other and further relief as the Court may deem just and proper.

## CONCLUSION

For the reasons stated herein, Plaintiffs pray for a judgment consistent with the requested Prayer.

Respectfully submitted:

Dated: February 27, 2024          By: _____

ADAM R. LUGO
Attorney for Plaintiffs
SIMIN KOREI, SAHEL KERMANSHAHI, and SAMAN KERMANSHAHI

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all Causes of Action and/or claims for relief alleged in, and on all issues raised by, this Complaint.

Dated: February 27, 2024          By: _____

ADAM R. LUGO
Attorney for Plaintiffs
SIMIN KOREI, SAHEL KERMANSHAHI, and SAMAN KERMANSHAHI

**67**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1250 E. Walnut Ave., Ste #136, Pasadena, CA 91106.

On February 27, 2024 I served the foregoing document(s) described as

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR

JURY TRIAL

on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

SEE ATTACHED SERVICE LIST

☐ **(BY MAIL)** I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **ONLY BY ELECTRONIC TRANSMISSION**: Only by emailing the document(s) listed above to the parties in this action using the email addresses identified on the attached Service List.  During the period of National Emergency declared pursuant to the COVID-19 pandemic, as well as the Orders of the Governor of California and Mayor of Los Angeles, physical work in this office will cease, and electronic mail will be the preferred method of communication. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission. We will provide a physical copy, on request only, upon a return to the office and the conclusion of the National Emergency and the above referenced Orders.

☐ **(BY FACSIMILE)**  I served by facsimile a true copy of the above-described document.  I am "readily familiar" with this firm's practice of processing correspondence by fax.  Under that practice documents are placed in our fax machine and are processed and received simultaneously at their destination.  The above-referenced document(s) was placed in the fax machine with all costs of faxing prepaid, directed to each party (using their fax number), listed on the attached Service List.  Once the document has been transmitted, the fax machine provides a report indicating time of completion.

☐ **(BY PERSONAL SERVICE)** I had delivered such envelope(s) by hand to the offices of the addressee(s).

☒ (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the above is true and correct.

Executed on February 27, 2024 at Los Angeles, California.

ADAM R. LUGO

Type or Print Name                                        Signature                    **68**

1

2                                    **SERVICE LIST**

3

4    Michael J. Terhar                              Attorneys for Defendant,
     Jonathan E. Hembree                            ORBIC AIR, LLC.
5    Carl Basile
     CUNNINGHAM SWAIM, LLP
6    2 North Lake Avenue, Suite 550
7    Pasadena, California 91101
     Telephone: (626) 765-3000
8    Facsimile: (626) 765-3030 Email:
     mterhar@cunninghamswaim.com
9    jhembree@cunninghamswaim.com
     cbasile@cunninghamswaim.com
10   cvivanco@cunninghamswaim.com

11

12   Evan L. Bardo                                  Attorneys for Defendant,
     28001 Dorothy Dr., 3rd Floor                   THE SEMLER
13   Agoura Hills, CA 91301                          COMPANIES/MALIBU DBA
     evan.bardo@semlercompanies.com                 SADDLEROCK RANCH
14

15   Ted R. Crisler                                 Attorneys for Defendant,
     Law Office of ERIC G. ANDERSON                 BUTTERFLY FLORAL AND
16   1851 E. First Street, Suite 750                EVENT DESIGN, INC.
17   Santa Ana, CA 92705
     Email: Ted.Crisler@cna.com
18   CNASCalifornia@CNA.com

19   Doug Griffith, Esq.                            Attorneys for Defendant,
     VICTOR RANE                                    HOSKING AVIATION, INC.
20   9350 Wilshire Boulevard, Suite 308
     Beverly Hills, CA 90212
21   Tel: (818) 919-8541
     Fax: (213) 814-4530
22   Email: dgriffith@victorrane.com
23   wharden@victorrane.com

24   Marta Alcumbrac (SBN 185551)                   Attorneys for Defendants,
     NEMECEK & COLE, APC                            SOPHIA HAKAKIAN and ELIOT
25   16255 Ventura Boulevard, Suite 300             KHAKSHOY
     Encino, California 91436-2300
26   Tel: (818) 788-9500
     Fax: (818) 501-0328
27   malcumbrac@nemecek-cole.com

28
                                                                              **69**

EXHIBIT "D"



November 3, 2020

Sophia Hakakian and Eliot Khakshoy
265 N Glenroy
Los Angeles, CA 90049

### FACILITIES USE AGREEMENT

This Facilities Use Agreement (the "Agreement") is entered into by and between Sophia Hakakian and Eliot Khakshoy ("Users") and The Semler Companies/Malibu, a California Limited Partnership, dba Saddlerock Ranch ("Saddlerock"), 31727 Mulholland Highway, Malibu, CA 90265.

### Facility, Event Date and Time, Set-up/Clean-up:

1)      Saddlerock will rent to Users, on Sunday, May 30th, 2021, the exterior grounds surrounding the Main Lawn venue at Saddlerock Ranch (the "Event Facilities"), for the purpose of User's wedding (the "Event"). The Event Facilities shall include the following:

a) the exterior grounds surrounding the Main Lawn venue;

b) the restrooms in the Cabana for the use of the Event guests. It is the Users' responsibility to provide hand towels and soap for the guests' use; Saddlerock will provide toilet paper;

c) the tennis court, if the Users are tenting the tennis court for use as a covered dining or dancing area;

d) water and electricity, except that, in the event that the Users' power needs exceed Saddlerock's capabilities, the Users, at their expense, will be required to provide generators. Saddlerock shall, upon review of the Users' intended plans, inform User of the need to provide generators.

The Event Facilities shall not include:

a) any part of the Main House or garage; and

b) the swimming pool.

2)      The Event shall start at approximately 5:00 p.m. Users and their vendors may enter Saddlerock and drop-off and/or set-up for the Event no earlier than 8:00 a.m. on Sunday, May 30th, 2021. All breakdown and clean-up must be completed, and all rental equipment and anything else brought to Saddlerock for use at the Event is to be picked up and removed from the grounds no later than 8:00 a.m. on Monday, May 31st, 2021; in the event that breakdown and cleanup is not completed within this time period, an additional fee of $500.00 per hour will be charged. Users will be billed for any additional hourly charges and agree to pay Saddlerock within ten (10) days of the date of the invoice.

**71**

3)    Users agree that the Event Facilities are for invited guests only.

4)    Users understand and agree that **SMOKING IS NOT PERMITTED** anywhere on Saddlerock Ranch.

### Number of Guests:

The expected number of guests will be 250.

### Fees:

The rental fee for the Event Facility is $12,000.00. A Deposit of $6,000.00 will be due at the signing of this Agreement to reserve the Event Facilities. A Security Deposit (see below), and the Balance of the rental fee (either $6,000.00 or the adjusted amount based on the applicable non-Preferred Rental Company fee and/or final guest count) shall be due ten (10) days prior to the Event. Any payment made less than ten (10) days prior to the event, for any reason, must be made by certified funds. Any payment returned to Saddlerock by the bank on which it is drawn will not be redeposited, and will result in a returned check fee of $40.00. Users who have had a check returned will be required to remit the full amount of the returned check, plus the $40.00 returned check fee, by cash, cashier's check or money order before being returned to the event calendar.

### Cancellation and Rescheduling:

Any cancellation of the Event must be in writing, and unless a written cancellation is received by Saddlerock, the Users will be responsible for all payments due Saddlerock under this Agreement. If the Event is cancelled, the Deposit is non-refundable, but the Users will not be responsible for any fees due after the date of cancellation.

If the Users request a cancellation due to substantial inclement weather or Acts of God, such as flood, fire, earthquake or windstorm, Saddlerock will make reasonable efforts to reschedule the Event. If the parties mutually agree, prior to the Event, to cancel and reschedule, the Deposit will be applied to the contract price for the rescheduled event. If Saddlerock, after reasonable efforts, is unable to reschedule the Event to the Users' satisfaction, Saddlerock will retain the Deposit as its full fee and neither party shall have any further obligation to the other under this Agreement.

Saddlerock shall not be liable to Users for any failure, delay, or interruption in the performance of any of the terms and conditions of this Agreement due to causes beyond the control of Saddlerock that make performance of this Agreement either illegal, impossible or commercially impracticable, such as, but not limited to, acts of God, war, government regulation, disaster or other casualty, strikes or threat of strikes (exception: neither party may terminate this Agreement for strikes or labor disputes involving their own employees or agents), acts and/or threats of terrorism, curtailment of transportation services or other events beyond the control of Saddlerock, and including any similar cause beyond the control of Saddlerock making it illegal, impossible or commercially impracticable to provide the facility. If Saddlerock, after reasonable efforts, is unable to reschedule the Event to the Users' satisfaction, any deposit paid to Saddlerock will be refunded to Users, less actual costs incurred by Saddlerock in anticipation of the event, and neither party shall have any further obligation to the other under this Agreement.

**Security Deposit:**

A Security Deposit of $1,000.00 will be required with the balance of the rental fee ten (10) days prior to the Event. The Users agree to leave the Event Facilities in the same condition as prior to the Event, in which case the Security Deposit will be fully refundable, and shall be disbursed to Users within twenty-one business days (21) after the Event. If there is damage to the Event Facilities, or if Saddlerock is required to expend additional effort or expense to clean the Event Facilities as a result of the Event, some or all of the security deposit may be applied to cover such costs, and the Users agree to pay the balance, if any, within ten (10) days after the Event.

**Security:**

Security is required for all events at Saddlerock Ranch. Saddlerock requires that Users utilize Sandman Security, Inc. Users are responsible for payment of all security fees directly to the security provider. The number of security guards required for the Event will be determined by Saddlerock and the security provider prior to the Event. Security is required during set-up and breakdown as well as during the Event.

**Catering and Equipment Rental:**

A list of preferred caterers will be provided to Users, and it is strongly recommended, but not required, that Users utilize a caterer that is on the preferred list, as they are familiar with Saddlerock's facility and its policies. Users will be required to utilize one of our Preferred Rental Companies as their party rental provider. If Users wish to utilize a non-Preferred Rental Company, the Rental Company must be approved by Saddlerock, and Users will be charged a $2,000.00 fee in addition to the site rental fee.

If Users utilize a caterer and/or rental company that is not on the preferred list, Users are responsible for informing the vendor of Saddlerock's policies. Users' caterer may set up a field kitchen in a designated area. No open-flame cooking is permitted. All waste, unused food, refreshments and trash must be removed from the Event facilities and properly disposed of. Saddlerock reserves the right to determine which areas may be used for food and drink service. Saddlerock accepts no responsibility for equipment left on or near the Event Facility.

All catering and rental costs are separate from Saddlerock's facility rental fees and are the sole responsibility of Users.

**Trash Disposal:**

For all events, it is expected that the Event Facilities are left in the condition that they were in prior to the Event. **All trash must be removed from the premises by the vendors (caterers, rental companies, etc.) at the conclusion of the Event.** For the convenience of Users and their vendors, Saddlerock can provide a 40 cubic yard roll-off container, for all trash and other waste generated by the Event. The fee for this container is $250.00, which shall be deducted from Users' Security Deposit.

**Valet:**

Valet parking is required for all events at Saddlerock Ranch. Because of the uniqueness of the parking situation, Saddlerock requires that the Users utilize SoCal Valet Services ("SoCal"). Users are responsible for payment for valet services directly to SoCal. The number of valet attendants required will be determined by Saddlerock and SoCal.

**Insurance:**

Users, and all vendors and/or subcontractors are each required to obtain general liability insurance coverage with an AM Best A rated carrier, in the amount of no less than $1,000,000.00 per occurrence and a $2,000,000.00 general aggregate, for the duration of the Event (including set-up and clean-up), and will submit to Saddlerock, with their final payment, an original policy or Certificate of Coverage issued by a licensed agent or representative of the insurer, identifying Saddlerock Ranch, et al., and Ronald and Lisa Semler as additional insureds. Neither Saddlerock Ranch, et al., nor Ronald and Lisa Semler assume any responsibility or liability whatsoever for any property of Users or any property of any of Users' guests or vendors which may be lost, stolen or damaged. Users agree that they will ensure that any and all vendors provide Saddlerock with proof of insurance ten (10) days prior to the Event. Notwithstanding any of the above, the approved security and valet providers have provided Saddlerock with proof of insurance, and Users are not obliged to ensure that either of these companies do so. Users agree to pay for the repair and/or replacement of any of Saddlerock's property which is lost, stolen or damaged as a result of Users' use of the Event Facilities.

**Alcoholic Beverage Policy:**

Alcoholic beverages are permitted at Saddlerock. It is Saddlerock's policy to serve only Saddlerock and Semler Malibu Estate wines. In the event that Users wish to serve any wine other than Saddlerock or Semler Malibu Estate, there will be a $20.00 per bottle corkage fee. However, since the Users require Kosher wine, the corkage fee shall be waived for all Kosher wine brought in and served at the Event. Any non-Kosher wine served at the Event other than Saddlerock or Semler shall be subject to the corkage fee. If Users do wish to purchase Saddlerock and/or Semler wine in addition to the Kosher wine they are providing, a substantial discount shall be provided on the retail price of all Saddlerock and/or Semler Malibu Estate wines purchased for the Event, and Saddlerock will arrange for free delivery to the Event. Wine may be ordered either through Saddlerock's Location Manager (lauren@saddlerock-ranch.com). "Hard" alcohol and beer can be arranged through the Users' caterer. Users agree to comply with all applicable local, state and federal ordinances, statutes, laws and regulations. Service of alcoholic beverages is limited to caterers only. Saddlerock, in accordance with state and federal laws, forbids the service of alcohol to minors. The sobriety of all guests is the responsibility of Users.

**Music:**

The Los Angeles County Noise Ordinance mandates, in a residential area, that sound levels be no more than 50 decibels at the "recipient" properties between 7:00 a.m. and 10:00 p.m., and no more than 45 decibels at the "recipient" properties between 10:00 p.m. and 7:00 a.m. Therefore, security shall closely monitor sound levels at the Event Facilities as well as the neighboring properties to insure strict compliance with the ordinance. At 10:00 p.m., live or recorded music must be lowered to 45 decibels or less at the Event Facilities. No live or recorded music of any kind is permitted after midnight. This provision shall be strictly enforced by security.

**Miscellaneous Provisions:**

1)     The Event Facilities will be used solely for the purposes of a wedding and no other uses are permitted without the prior written consent of Saddlerock.

2)     Users understand and acknowledge that there may be other events held on the same day and/or time at Saddlerock Ranch, and although Saddlerock will do its best to minimize any

**74**

impact upon Users' event, Saddlerock cannot guarantee that there will be no effect at all upon Users' event.

3)      This Agreement is for the sole benefit of Users and may not be sold, transferred or assigned.

4)      Users agree that they will indemnify and hold harmless Ronald Semler, Lisa Semler, The Semler Companies/Malibu, a California Limited Partnership dba Saddlerock Ranch, and its directors, officers, agents, employees and volunteers free and harmless from and against all claims for damage or injury to persons or property arising out of or in any way connected with Users' acts or omissions by Users or their agents, employees, vendors, contractors, guests or invitees in their use and presence on Saddlerock Ranch, including specifically a full and complete waiver and indemnification regarding all claims related to COVID-19 that may be brought by Users, their guests, their service providers, and all other third-parties related to Users' event. Users agree that they will pay all costs of the Event and will indemnify Saddlerock and its directors, officers, agents, employees and volunteers against any claim or lien for unpaid costs.

5)      This Agreement grants Users a license only to use the Event Facilities for the purpose and during the times set forth herein. This Agreement is not a lease and conveys to Users no right of possession or other interest in Saddlerock Ranch or the Event Facilities.

6)      If legal action is taken by either party in connection with this Agreement, the losing party will pay the court costs, attorney's fees and expenses of the prevailing party. This Agreement is governed by the laws of the State of California, and the parties consent to the Los Angeles County Superior Court as the proper venue should any litigation arise out of this Agreement.

7)      This Agreement and any related documents supersede all prior oral and written representations or agreements between the parties, and shall be interpreted as if written jointly by all parties to the Agreement. This Agreement may only be amended by a subsequent writing executed by all parties. This Agreement may be executed in counterparts. This Agreement shall inure to the benefit of, and be binding upon, all successors and assigns of the parties to this Agreement.

"USERS"

Sophia Hakakian
265 N Glenroy
Los Angeles, CA 90049

Eliot Khakshoy
(same)

"SADDLEROCK"
The Semler Companies/Malibu, a California Limited Partnership,
dba Saddlerock Ranch

By:      Ronald H. Semler

EXHIBIT "E"

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
03/09/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Simon Gurfinkel | | |
|---|---|---|---|
| SIMON GURFINKEL INSURANCE AGENCY | PHONE (A/C, No, Ext): 323-656-0645 | | FAX (A/C, No): 323-656-2637 |
| 8205 SANTA MONICA BLVD | E-MAIL ADDRESS: gurfinkelsimon@yahoo.com | | |
| SUITE 14 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| LOS ANGELES          CA 90046 | INSURER A : VALLEY FORGE INSURANCE COMPANY | | |
| INSURED | INSURER B : United Financial Cas Co | | |
| BUTTERFLY FLORAL & EVENT DESIGN INC | INSURER C : THE HARTFORD | | |
| . | INSURER D : | | |
| 2861 W PICO BLVD | INSURER E : | | |
| Los Angeles          CA 90006 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | ✓ COMMERCIAL GENERAL LIABILITY | | Y | B 6020789689 | 10/26/2020 | 10/26/2021 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE ✓ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | ✓ POLICY PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| B | AUTOMOBILE LIABILITY | | | 06033379 | 11/02/2020 | 11/02/2021 | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ 100,000 |
| | ALL OWNED AUTOS ✓ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ 300,000 |
| | HIRED AUTOS NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ 50,000 |
| | | | | | | | | $ |
| | UMBRELLA LIAB OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED RETENTION $ | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | N / A | | 57WECAB7YWR | 03/02/2020 | 03/02/2021 | PER STATUTE OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| . | . | | | . | . | . | . | . |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

The Cetificate Holder is listed as Additional Insured

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Saddlerock Ranch | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| 31727 Mulholland Hwy | AUTHORIZED REPRESENTATIVE |
| Malibu          CA 90265 | *Simon gurfinkel* |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)          The ACORD name and logo are registered marks of ACORD

77

# EXHIBIT "F"



Insurance | Risk Management | Consulting

# CERTIFICATE OF AVIATION INSURANCE

This is to certify that the following policy(s), subject to the terms, conditions, limitations and endorsements contained therein, and during their effective period, have been issued by the insurance company(s) listed below. In the event of cancellation of said policy(s), the insurance company(s) may endeavor to notify the certificate holder, but failure to do so shall impose no liability or obligation of any kind upon the undersigned or the insurance company(s) involved. **\*NOTE: The inclusion of persons or entities as "Insureds" only applies to that persons' or entities' contingent liability arising out of the operations of the Named Insured, which are the subject of coverage under a policy or policies referenced herein, unless otherwise noted.**

**CERTIFICATE ISSUED TO:**
Saddlerock Ranch
3127 Mulholland Highway
Malibu, CA 90265

**NAMED INSURED:**
Orbic Air, LLC
10750 Sherman Way, Suite #103
Burbank, CA 91505

| TYPE OF COVERAGE | INSURANCE COMPANY POLICY NO. | POLICY PERIOD | LIMITS OF LIABILITY |
|---|---|---|---|
| Aircraft Liability | Starr Indemnity & Liability Company Policy #SASICOM60149320-03 25% Lead Line<br><br>Endurance Assurance Corporation Policy #NQC6036049 25% Following Line<br><br>Great American Ins. Co. Policy #QSE96000-01 25% Following Line<br><br>Harco National Ins. Co. Policy #AVC1000092-00 | 10/24/20 To 10/24/21 | **N130CZ:** $10,000,000 Combined Property Damage and Bodily Injury, Including Passenger Bodily Injury, Each Occurrence applies to Commercial Operations. **N893P, N624WC:** $5,000,000 Combined Property Damage and Bodily Injury, Including Passenger Bodily Injury, Each Occurrence applies to Commercial Operations. **All Aircraft:** $1,000,000 Combined Single Limit, Property Damage and Bodily Injury, including passengers, each occurrence applies to Commercial Operations, Instruction and Rental and Pleasure and Business Use by the owners. |

| YEAR, MAKE & MODEL | AMOUNT INSURED | REG. NO. | LIEN AMOUNT |
|---|---|---|---|
| 2008 Robinson R22 | Per Policy | N47CD | N/A |
| 2005 EC 130 | Per Policy | N130CZ | N/A |
| 10 Robinson R44II | Per Policy | N893P | N/A |
| 15 Robinson R44 II | Per Policy | N624WC | N/A |

**ADDITIONAL AGREEMENTS:**

It is hereby understood and agreed that Saddlerock Ranch is included as an Additional Insured under Liability Coverages, but only to the extent of liability imposed upon the Additional Insured solely as the result of an act or omission of the Named Insured or its employees in connection with the Named Insured's Aircraft operations, subject to all policy terms, limits, conditions and exclusions. Starr 10234

**DATE OF ISSUE**    October 23, 2020

**CERTIFICATE NUMBER**    24

**BY**    _(signature)_

**GALLAGHER AVIATION**
2580 Foxfield Rd., Suite 203 St. Charles, IL 60174
Phone: 847/586-0800  Fax: 847/586-0810
CA License #0D69293

**79**

EXHIBIT "G"



LOS ANGELES * SAN DIEGO * SAN FRANCISCO * LAS VEGAS

March 21, 2024

**SENT VIA EMAIL AND US MAIL**

Michael J. Terhar
Cunningham Swaim, LLP
2 North Lake Avenue, Suite 550
Pasadena, California 91101
mterhar@cunninghamswaim.com

Starr Indemnity & Liability Company
399 Park Avenue, 8th Floor
New York, NY 10022
Claims@starrcompanies.com

> Re:    <u>Yaghoub Kermanshahi; Simin Korei v. Orbic Air, LLC., et al.</u>
>        Los Angeles County Case # 22SMCV01974
>        Our Client:  The Semler Companies/Malibu dba Saddlerock Ranch
>        Our file no.: 131-1106

Dear Mr. Terhar / Starr Indemnity & Liability Company:

As you know, our firm represents The Semler Companies/Malibu dba Saddlerock Ranch (Semler) regarding the October 25, 2022 complaint initially filed Yaghoub Kermanshahi and Simin Korei. This letter shall serve as Semler's formal demand for defense and indemnity in this dispute.

Sophia Hakakian and Eliot Khakshoy sought out the use of the property located at or around 32111 Mulholland Hwy, Malibu, CA 90265 at the Saddlerock Ranch, as the venue for their wedding that took place on May 30, 2021. While planning the wedding, Ariel Khakshoy reached out to Anna Kotelyan about hiring Orbic Air to fly over the wedding and drop flower petals. Ms. Kotelyan, as Ariel Khakshoy's agent, enlisted the services of Orbic Air Flight Operations and set up a reservation to have it perform a flyover during the wedding to drop rose petals. As Semler only provided the grounds for the wedding, a certificate of insurance was requested listing Semler as an additional insured from Orbic Air's insurer.

During the flyover, the downdraft from the helicopter caused an unsecured structure set up by a third party to allegedly fall and strike Plaintiff Yaghoub Kermanshahi in the head, allegedly causing brain injuries and ultimately his death.

Re: *Kermanshahi v. Orbic Air*
March 21, 2024
Page **2** of **2**
_____

On March 23, 2023 Semler filed a cross-complaint against Zoes 1 through 50, for the potential liability of Plaintiff's claims. On March 28, 2023 Semler amended the cross-complaint to correctly name Orbic Air. LLC as cross-defendant.

On May 15, 2023 Mr. Kermanshahi passed away. Kermanshahi's wife, Plaintiff Simin Korei, and their children Sahel and Saman Kermanshahi allege his death was caused due to the extent of his injuries after the May 30, 2021 incident. They have subsequently amended the complaint alleging wrongful death.

Semler submits that the accident alleged by Plaintiff was caused, at least in part, by the negligent flying of a helicopter over the wedding on May 30, 2021 at the subject property. Semler had nothing to do with Orbic Air's negligence due to the turbulent, low-flying downdraft produced by the helicopter as it flew over the wedding venue. Semler also had nothing to do with setting up the wedding altar (unsecured structure) that fell over and allegedly hit the Plaintiff in the head causing injury. Semler only provided the grounds upon which the wedding was permitted, Semler had nothing to do with the vendors hired by the wedding party and their agents. Accordingly, Orbic Air is primarily liable for the decedent's injuries and the damages alleged in this case. Pursuant to the terms of Semler's contract, all vendors were obligated to purchase insurance and name Semler as an additional insured.

For this reason, Semler tenders Orbic Air, LLC this claim for defense and indemnity in the above-entitled matter. Attach please find copies of the Second Amended Complaint, the Cross Complaint filed by Semler and its amendment to correctly name Orbic Air, LLC as cross-defendant.

Please advise you response by March 27, 2024. Should you have any questions, please contact the undersigned.

Very truly yours,

Joel Glaser, Esq.
SKANE MILLS LLP

# EXHIBIT "H"



## STARR

### INSURANCE COMPANIES

Direct Phone: (770) 686-5410
Email: Tracy.Morris@StarrCompanies.com

April 16, 2024

**Via Email Only**
Joel Glaser                                    jglaser@skanemills.com
Skane Mills LLP

Re:   Insured:        Orbic Air, LLC
      Case:           Yaghour Kermanshahi v. Orbic Air, LLC, et. al.
      Date of Loss:   05/30/2021
      Claim Number:   AVSIL0608299

Dear Mr. Glaser:

Starr Adjustment Services, Inc. ("Starr") represents the insurable interests of Orbic Air, LLC. ("Orbic Air"). We are in receipt of your March 21, 2024 letter to Orbic Air, ("the Tender Letter") in which The Semler Companies/Malibu dba Saddlerock Rancher ("Semler") has tendered the defense of Semler to Orbic Air for the suit filed by Kermanshahi.

Your letter states that this stems from an incident that occurred at your property at 32111 Mulholland Hwy, Malibu, CA 90265 (Saddlerock Ranch) on May 30, 2021. You allege that Ariel Khakshoy hired Orbic Air to fly over the wedding and drop flower petals.  Your letter alleges that Orbic Air negligently flew a helicopter over the wedding and that the downdraft from the subject helicopter caused an unsecured structure to fall and injure the Plaintiff Yaghoub Kermanshahi. However, Orbic Air did not operate the helicopter over the wedding on May 30, 2021. The subject helicopter was owned and operated by Hosking Aviation. Hosking Aviation is not a Starr insured.

Semler's tender is made pursuant to a certificate of insurance issued to Orbic Air and naming Saddlerock Ranch. That certificate of insurance relates to Aircraft Policy number SASICOM60149320-03. That certificate of insurance contains four scheduled aircraft. Further, that certificate of insurance contains the following language, "It is hereby understood and agreed that Saddlerock Ranch is included as an Additional Insured under Liability Coverages, but only to the extent of liability imposed upon the Additional Insured solely as a result of an act or omissions of the Named Insured or its employees in connection with the Named Insured's Aircraft operations, subject to all policy terms, limits, conditions and exclusions."

As Erik Janas previously advised on December 13, 2022, in response to Semler's original tender, Saddlerock Ranch is included as an additional insured only

as respect aircraft scheduled on the policy. The aircraft involved in the May 30, 2021 incident was identified as N450CC, which was not scheduled on this policy. It was not owned or operated by Orbic Air which is why it is not scheduled (and not listed on Saddlerock Ranch's certificate). Further, the accident at issue did not result from the Named Insured's aircraft operations as Orbic Air did not own or operate the subject helicopter. Therefore, we must respectfully deny your tender for defense and indemnity at this time.

Should you have any questions about this matter, please do not hesitate to contact me.

Sincerely,

*Tracy L. Morris*

Tracy L. Morris, Esq.
Vice President of Aviation Claims, Major Risks

# EXHIBIT "I"

**From:** Evan Bardo <evan.bardo@semlercompanies.com>
**Sent:** Wednesday, December 14, 2022 11:00 AM
**To:** Crisler,Ted R. <Ted.Crisler@CNA.com>
**Subject:** [EXTERNAL] Claim # 8333665262; My client: Saddlerock Ranch - Tender as Additional Insured

Hi Ted,

My name is Evan Bardo and I'm General Counsel for The Semler Companies/Malibu, a California Limited Partnership dba Saddlerock Ranch.

My understanding is that you are counsel assigned to the claim for the florist.

My client is an additional insured on the florist's policy and is tendering the claim for defense. I will be the contact person for Saddlerock Ranch regarding the claim and was told you were the person to contact regarding the tender of the defense on behalf of Saddlerock.

Please give me a call to discuss this or let me know via email your availability today and tomorrow so that we can set up a time to talk if that works better for you.

Looking forward to discussing this with you. Thank you in advance for your anticipated consideration of, and response to, the above.

Yours truly,

Evan L. Bardo
*General Counsel*
**Semler Companies**
28001 Dorothy Drive, Third Floor
Agoura Hills, California 91301

Telephone: (818) 650-2944

E-mail: evan.bardo@semlercompanies.com

(Licensed in CA and TX)

--

CONFIDENTIALITY NOTICE:  The information in this message, and any files  transmitted with it, is confidential, may be legally privileged, and intended only for the use of the individual(s) named above.  Be aware that the use of any confidential or personal information may be restricted by state and federal privacy laws.  If you are not the intended recipient, do not further disseminate this message.  If this message was received in error, please notify the sender and delete it.

CONFIDENTIALITY NOTICE:  The information in this message, and any files transmitted with it, is confidential, may be legally privileged, and intended only for the use of the individual(s) named above.  Be aware that the use of any confidential or personal information may be restricted by state and federal privacy laws.  If you are not the intended recipient, do not further disseminate this message.  If this message was received in error, please notify the sender and delete it.

This e-mail message, including any attachments and appended messages, is for the sole use of the intended recipients and may contain confidential and legally privileged information.
If you are not the intended recipient, any review, dissemination, distribution, copying, storage or other use of all or any portion of this message is strictly prohibited.
If you received this message in error, please immediately notify the sender by reply e-mail and delete this message in its entirety.

Consider the environment before printing this message.

This transmission is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is confidential, proprietary, privileged or otherwise exempt from disclosure. If you are not the named addressee, you are NOT authorized to read, print, retain, copy or disseminate this communication, its attachments or any part of them. If you have received this communication in error, please notify the sender immediately and delete this communication from all computers. This communication does not form any contractual obligation on behalf of the sender, the sender's employer, or the employer's parent company, affiliates or subsidiaries.

CONFIDENTIALITY NOTICE:  The information in this message, and any files transmitted with it, is confidential, may be legally privileged, and intended only for the use of the individual(s) named above.  Be aware that the use of any confidential or personal information may be restricted by state and federal privacy laws.  If you are not the intended recipient, do not further disseminate this message.  If this message was received in error, please notify the sender and delete it.

Consider the environment before printing this message.

This transmission is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is confidential, proprietary, privileged or otherwise exempt from disclosure. If you are not the named addressee, you are NOT authorized to read, print, retain, copy or disseminate this communication, its attachments or any part of them. If you have received this communication in error, please notify the sender immediately and delete this communication from all computers. This communication does not form any contractual obligation on behalf of the sender, the sender's employer, or the employer's parent company, affiliates or subsidiaries.

CONFIDENTIALITY NOTICE:  The information in this message, and any files transmitted with it, is confidential, may be legally privileged, and intended only for the use of the individual(s) named above.  Be aware that the use of any confidential or personal information may be restricted by state and federal privacy laws.  If you are not the intended recipient, do not further disseminate this message.  If this message was received in error, please notify the sender and delete it.

Consider the environment before printing this message.

This transmission is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is confidential, proprietary, privileged or otherwise exempt from disclosure. If you are not the named addressee, you are NOT authorized to read, print, retain, copy or disseminate this communication, its attachments or any part of them. If you have received this communication in error, please notify the sender immediately and delete this communication from all computers. This communication does not form any contractual obligation on behalf of the sender, the sender's employer, or the employer's parent company, affiliates or subsidiaries.

EXHIBIT "J"



LOS ANGELES * SAN DIEGO * SAN FRANCISCO * LAS VEGAS

March 21, 2024

**SENT VIA EMAIL AND US MAIL**

Ted R. Crisler
Law Office of Eric G. Anderson
1851 E. First St, #750, Santa Ana, CA 92705
P.O. Box 94743, Chicago, IL 60690-4743
Ted.Crisler@cna.com; CNASCalifornia@cna.com

Simon Gurfinkel Insurance Agency
8205 Santa Monica Blvd, Suite 14
Los Angeles, CA, 90046
gurfinkelsimon@yahoo.com

      Re:    _Yaghoub Kermanshahi; Simin Korei v. Orbic Air, LLC, et al._
             Los Angeles County Case # 22SMCV01974
             Our Client:  The Semler Companies/Malibu dba Saddlerock Ranch
             Our file no.: 131-1106

Dear Mr. Crisler / Simon Gurfinkel Insurance Agency:

      As you know, our firm represents The Semler Companies/Malibu dba Saddlerock Ranch (Semler) regarding the October 25, 2022 complaint initially filed Yaghoub Kermanshahi and Simin Korei. This letter shall serve as Semler's formal demand for defense and indemnity in this dispute.

      Sophia Hakakian and Eliot Khakshoy sought the use of the property located at or around 32111 Mulholland Hwy, Malibu, CA 90265 at the Saddlerock Ranch, as the venue for their wedding that took place on May 30, 2021. The groom and bride contracted the Butterfly Floral and Event Design Inc.'s (Butterfly Floral) services to provide floral arrangements and to set up various wedding alters during the ceremony. One of the structures built, furnished and set up for the wedding by Butterfly Floral allegedly fell and struck Plaintiff Yaghoub Kermanshahi in the head when a helicopter, contracted by the brother of the groom, flew over the wedding and drop flower petals. According to the attached second amended complaint, the fall of the unsecured structure caused Mr. Kermanshahi brain injuries, which ultimately resulted in his death.

Re: *Kermanshahi v. Orbic Air*
March 21, 2024
Page **2** of **2**
_____

     On March 23, 2023, Semler filed a cross-complaint against Zoes 1 through 50, for the potential liability of Plaintiff's claims. On March 28, 2023 Semler amended the cross-complaint to correctly name Butterfly Floral and Event Design Inc. as cross-defendant.

     On May 15, 2023, Mr. Kermanshahi passed away. Kermanshahi's wife, Plaintiff Simin Korei, and their children Sahel and Saman Kermanshahi allege his death was caused due to the extent of his injuries after the May 30, 2021 incident. They have subsequently amended the complaint alleging wrongful death.

     Semler submits that the accident alleged by Plaintiff was caused, at least in part, by the negligent failure to secure the referenced structure. Semler had nothing to do with setting up the wedding altar (unsecured structure) that fell over and allegedly hit the Plaintiff in the head causing injury.  Semler only provided the grounds upon which the wedding was permitted, Semler had nothing to do with the vendors hired by the wedding party and their agents. Furthermore, Semler relied on those vendors, including Butterfly Floral to refrain from causing harm to the attendees. However, it was the negligence of Butterfly Floral that caused the incident. As you are aware, Semler was named as an additional insured on Butterfly Floral's liability insurance policy.

     For this reason, Semler tenders Butterfly Floral and Event Design Inc. this claim for defense and indemnity in the above-entitled matter. Attach please find copies of the Second Amended Complaint, the Cross Complaint filed by Semler and its amendment to correctly name Butterfly Floral and Event Design Inc. as cross-defendant.

     Please advise you response by March 27, 2024. Should you have any questions, please contact the undersigned.

Very truly yours,

Joel Glaser, Esq.
SKANE MILLS LLP

# EXHIBIT "K"



*PO Box 14250*
*Lexington, KY 40512*

*Phone: (469) 729-4287*
*Fax: (859) 410-2629*

April 17, 2024

Skane Mills LLP
Attn:  Mr. Joel Glaser, Esq.
550 South Hope St., Suite 410
Los Angeles, CA  90071

| |
|---|
| Claim #: 189581278-001 |
| Date of Loss: 5/30/2021 |
| Insured: BUTTERFLY FLORAL & EVENT DESIG |

RE: Claimant:  Yahoub Kermanshahi

I am in receipt of your March 21, 2024 defense and indemnity tender request sent to defense attorney, Ted Crisler.  We must deny the tender request at this time.  We do not believe the current evidence/documentation supports the request.  As you know, we have been in a liability denial position for some time.

Please note that the undersigned claim professional is an employee of Broadspire Services, Inc., who is the claims administrator for this claim.  Broadspire is handling the claim on behalf of VALLEY FORGE INSURANCE CO, a CNA-affiliated underwriting company.

Sincerely,
Broadspire Services, Inc. on behalf of:
VALLEY FORGE INSURANCE CO


*Brian B Faucheaux*
Senior Claim Examiner
(469) 729-4287

# EXHIBIT "L"

Electronically Received 10/14/2024 04:47 PM

1  Heather L. Mills, Esq.  (SBN 190950)
2  Joel P. Glaser, Esq. (194442)
   SKANE MILLS LLP
3  550 So. Hope St., Suite 410
   Los Angeles, CA 90071
4  T: (213) 452-1200 / F: (213) 452-1201
   hmills@skanemills.com / jglaser@skanemills.com
5
6  Attorneys for Defendant/Cross-Complainant/Cross-Defendant,
   THE SEMLER COMPANIES/MALIBU dba SADDLEROCK RANCH
7
8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9            **COUNTY OF LOS ANGELES – SANTA MONICA COURTHOUSE**

10
11  SIMON KOREI, individually and as successor    CASE NO. 22SMCV01974
    to the estate of Yaghoub Kermanshahi; SAHEL
12  KERMANSHAHI; and SAMAN                         *Assigned to Hon. Elaine W. Mandel, Dept. P*
    KERMANSHAHI,
13                                                 **THE SEMLER COMPANIES/MALIBU DBA**
                       Plaintiffs,                 **SADDLEROCK RANCH'S SECOND**
14                                                 **AMENDED CROSS-COMPLAINT FOR:**
    vs.
15                                                    1. Indemnity;
    ORBIC AIR. LLC.; HOSKING AVIATION,                2. Contribution and Apportionment; and
16  INC.; BUTTERFLY FLORAL AND EVENT                  3. Declaratory Relief
    DESIGN, INC.; THE SEMLER                          4. Breach of Contract - Eliot Khakshoy and
17  COMPANIES/MALIBU dba SADDLEROCK                      Sophia Hakakian
    RANCH and DOES 1 to 25, Inclusive,                5. Breach of Contract – Butterfly Floral
18                                                       [Intentionally Omitted]
                       Defendants.                   6. Breach of Contract – Orbic Air
19                                                   7. Fraud - Eliot Khakshoy and Sophia
                                                        Hakakian
20                                                   8. Fraud – Butterfly Floral [Intentionally
                                                        Omitted]
21                                                   9. Fraud – Orbic Air
                                                    10. Fraud – Anna Kotelyan
22                                                  11. Negligence - Eliot Khakshoy and Sophia
                                                        Hakakian
23                                                  12. Negligence – Butterfly Floral
                                                    13. Negligence – Orbic Air
24                                                  14. Negligence – Hosking Aviation
                                                    15. Negligence – Ana Kotelyan
25                                                  16. Negligent misrepresentation - Eliot
                                                        Khakshoy and Sophia Hakakian
26                                                  17. Negligent misrepresentation – Butterfly
                                                        Floral [Intentionally Omitted]
27                                                  18. Negligent misrepresentation – Orbic Air
                                                    19. Negligent misrepresentation – Anna
28                                                      Kotelyan

---

FILED
Superior Court of California
County of Los Angeles

10/14/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ A. Hamilton _____ Deputy

20. Breach of implied covenant of good faith and fair dealing - Eliot Khakshoy and Sophia Hakakian
21. Breach of implied covenant of good faith and fair dealing – Butterfly Floral [Intentionally Omitted]
22. Breach of implied covenant of good faith and fair dealing – Orbic Air

THE SEMLER COMPANIES/MALIBU dba SADDLEROCK RANCH

          Cross-Complainant,

v.

ORBIC AIR. LLC.; BUTTERFLY FLORAL AND EVENT DESIGN, INC.; SOPHIA HAKAKIAN AND ELIOT KHAKSHOY; HOSKING AVIATION, INC.; ANNA KOTELYAN dba HAUTE COUTURE EVENTS; ZOES 1 through 50, inclusive

          Cross-Defendants

Complaint Filed:    October 25, 2022
Trial Date:       None Set

COMES NOW, Defendant, THE SEMLER COMPANIES/MALIBU dba SADDLEROCK RANCH, and alleges as follows:

## GENERAL ALLEGATIONS

### The parties

1. THE SEMLER COMPANIES/MALIBU dba SADDLEROCK RANCH, (hereinafter "Cross-Complainant") is, and at all times herein mentioned was, a corporation duly organized and existing, by virtue of the laws of the State of California with a place of business in the County of Los Angeles, State of California.

2. Cross-Complainant is informed and believes and based thereon allege that at all times relevant to the subject matter of this litigation, Cross-Defendants named herein are, and at all times herein mentioned were, either individuals, sole proprietorships, partnerships, registered professionals, corporations or other legal entities which were licensed to do and were doing business in the County of Los Angeles, State of California.

3. Cross-Complainant is informed and believes and thereupon alleges that Cross-Defendants and each of them were at all times relevant residents of the County of Los Angeles, State of California, or were organized and existing by and under the laws of the State of California and were authorized to and doing business in the County of Los Angeles, State of California.

4. Butterfly Floral and Event Design, Inc. (hereinafter "Butterfly Floral") is a California General Stock Corporation with its principal address located at 2861 W. Pico Blvd., in Los Angeles, CA.

5. Orbic Air, LLC. (hereinafter "Orbic Air") is a California Limited Liability Company with its principal address located at 10750 Sherman Way, Burbank, CA 91505.

6. Hosking Aviation Inc. (hereinafter "Hosking Aviation") is an Out of State Stock Corporation incorporated in Utah with its principal address located at 1991 Mapleview Drive, Bountiful, UT 84101.

7. Sophia Hakakian (hereinafter "Hakakian") is an individual and a resident of Los Angeles County.

8. Eliot Khakshoy (hereinafter Khakshoy") is an individual and a resident of Los Angeles County.

9. Anna Kotelyan (hereinafter "Kotelyan") is an individual and a resident of Los Angeles County dba Haute Couture Events.

10. Cross-Complainant is ignorant of the true names and capacities of Cross-Defendants sued herein as ZOES 1 through 50 and, therefore, sues these Cross-Defendants by such fictitious names. Cross-Complainant will amend this Cross-Complaint to allege their true names and capacities when ascertained. Cross-Complainant is informed and believes and thereupon alleges that each of the fictitiously named Cross-Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' injuries and damages, as herein alleged, were proximately caused by such Cross-Defendants.

11. Cross-Complainant is informed and believes and thereupon alleges that at all times mentioned herein each of the Cross-Defendants was the agent and employee of each of the remaining Cross-Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency and with the permission and consent of others.

\\\

## Factual Allegations Material to All Causes of Action

12. On or about November 3, 2020 Cross-Complainant entered into a written contract with Cross-Defendants Hakakian and Khakshoy for Cross-Complainant to rent said Cross-Defendants, on Sunday, May 30 2021 *"the exterior grounds surrounding the Main Lawn venue at Saddlerock Ranch (the "Event Facilities"), for the purpose of User's wedding (the "Event).* A true and correct copy of the written contract is attached hereto as Exhibit A.

13. Pursuant to said written contract and its implied terms therein, Cross-Defendants Hakakian and Khakshoy and any ZOE alter egos, agreed to indemnify and hold harmless Cross-Complainants against all claims for damage or injury to persons or property arising out of or in any way connected with Cross-Defendants' acts or omissions by Cross Defendants' or their agents, employees, vendors, contractors, guests or invitees in their use and presence on Saddlerock Ranch as described in the Plaintiffs' Complaint for Damages.

14. Cross-Defendants further agreed to furnish insurance for their event that took place on Saddlerock Ranch, during which time the Plaintiffs' sustained their damages. The agreement provides:

*"Insurance:*
*Users, and all vendors and/or subcontractors are each required to obtain general liability insurance coverage with an AM Best A rated carrier, in the amount of no less than $1,000,000.00 per occurrence and a $2,000,000.00 general aggregate, for the duration of the Event (including set-up and clean-up), and will submit to Saddlerock, with their final payment, an original policy or Certificate of Coverage issued by a licensed agent or representative of the insurer, identifying Saddlerock Ranch, et al., and Ronald and Lisa Semler as additional insureds. Neither Saddlerock Ranch, et al., nor Ronald and Lisa Semler assume any responsibility or liability whatsoever for any property of Users or any property of any of Users' guests or vendors which may be lost, stolen or damaged. Users agree that they will ensure that any and all vendors provide Saddlerock with proof of insurance ten (10) days prior to the Event. Notwithstanding any of the above, the approved security and valet providers have provided Saddlerock with proof of insurance, and Users are not obliged to ensure that either of these companies do so. Users agree to pay for the repair and/or replacement of any of Saddlerock's property which is lost, stolen or damaged as a result of Users' use of the Event Facilities."*

15. Cross-Defendants Hakakian and Khakshoy designated Cross-Defendant Kotelyan, through Ms. Kotelyan's company, Haute Couture Events, as their agent for planning the wedding.

16. Cross-Defendants Hakakian and Khakshoy did not provide Cross-Complainant with the Certificate of Insurance.

17. Cross-Defendants Hakakian and Khakshoy contracted with Cross-Defendant Butterfly Floral to provide floral arrangements and to set up various wedding alters during the ceremony. Cross-

Defendant Butterfly Floral provided Cross-Complainant a Certificate of Insurance in which Cross-Complainant was named as an additional insured on Cross-Defendant Butterfly Floral's liability insurance policy.

18. While planning the wedding, Ariel Khakshoy reached out to Cross-Defendants Hakakian and Khakshoy's agent and wedding planner, Kotelyan, about hiring Orbic Air to fly over the wedding and drop flower petals.  Ms. Kotelyan, as Hakakian, Khakshoy and Ariel Khakshoy's agent, enlisted the services of Orbic Air Flight Operations and set up a reservation to have it perform a flyover during the wedding to drop rose petals. As Cross-Complainant only provided the grounds for the wedding, a certificate of insurance was required listing Cross-Complainant as an additional insured from Orbic Air's insurer. Orbic Air provided Cross-Complainant with a Certificate of Aviation Insurance.

19. During the flyover, the downdraft from the helicopter caused an unsecured structure built, furnished and set up for the wedding by Butterfly Floral and Event Design Inc., to allegedly fall and strike Plaintiff Yaghoub Kermanshahi in the head, allegedly causing brain injuries and ultimately his death.

## FIRST CAUSE OF ACTION

### Indemnity

(Against Butterfly Floral and Event Design, Inc., Orbic Air, LLC., Hosking Aviation Inc., Sophia Hakakian, Eliot Khakshoy, Anna Kotelyan dba Haute Couture Events, and Zoes 1-50, Inclusive)

20. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

21. Cross-Complainant denies any liability on its part, but if the allegations of Plaintiff are true in any respect and Cross-Complainant is found to have been legally responsible, any legally responsible conduct on the part of Cross-Complainant was of a secondary and passive nature, while the legally responsible conduct of the Cross-Defendants herein was primary and active. Cross-Complainant seeks to be indemnified and held harmless from any liability, and for any and all expenses of litigation, sums paid by way of settlement and/or judgment, and all other costs incidental to the defense, investigation and handling of this litigation.

22. If Cross-Defendants do not defend this action on behalf of Cross-Complainant, or indemnify it, Cross-Complainant will necessarily and reasonably incur attorneys' fees and other legal costs in its defense, and Cross-Defendants shall be liable therefor.

## SECOND CAUSE OF ACTION

### Contribution and Apportionment

(Against Butterfly Floral and Event Design, Inc., Orbic Air, LLC., Hosking Aviation Inc., Sophia Hakakian, Eliot Khakshoy, Anna Kotelyan dba Haute Couture Events and Zoes 1-50, Inclusive)

23. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

24. Cross-Complainant denies that it either caused or contributed to the injuries and damages alleged by Plaintiffs' in their Complaint. If, however, it is found that Cross-Complainant was responsible under law for any part of the injuries and/or damages suffered by Plaintiffs', then Cross-Complainant herein alleges, upon information and belief, that the said injuries and damages were solely and/or substantially caused by the negligence, carelessness recklessness, and willful and wanton misconduct of Cross-Defendants herein, thereby entitling Cross-Complainant to have the quantum of legally responsible conduct of the Cross-Defendants determined by this Court.

25. Cross-Complainant further alleges that if Plaintiffs' recover any judgment against it, the legally responsible conduct of the Cross-Defendants herein exceeded that of Cross-Complainant and Cross-Complainant is, therefore, entitled to contribution and apportionment of the liability of the Cross-Defendants to the extent that the legally responsible conduct of the Cross-Defendants proximately caused and contributed to any injuries and/or damages suffered by Plaintiffs', so that liability is ultimately assessed among the parties in direct proportion to the percentages of fault respectively attributable to their conduct.

\\\
\\\
\\\
\\\

## THIRD CAUSE OF ACTION

### Declaratory Relief

(Against Butterfly Floral and Event Design, Inc., Orbic Air, LLC., Hosking Aviation Inc.,

Sophia Hakakian, Eliot Khakshoy, Anna Kotelyan dba Haute Couture Events and Zoes 1-50,

Inclusive)

26. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

27. Cross-Complainant alleges, upon information and belief, that an actual controversy has arisen and now exists between Cross-Complainant and Cross-Defendants herein as to whether said Cross-Defendants must contribute, in whole or in part, toward satisfaction of any award or judgment obtained by Plaintiffs' on the basis of either total indemnity or an apportionment of respective degrees of legal responsibility.

28. A declaration of rights is necessary and appropriate at this time in order that Cross-Complainant may ascertain its rights and duties. No adequate and expeditious remedy other than such declaration exists by which the rights of the parties hereto may be determined. If responsibility on the part of Cross-Complainant is determined to be a concurrent proximate cause of the damages allegedly sustained by Plaintiffs', Cross-Complainant may be burdened with a share of the judgment disproportionate to its fault, if any, without recourse.

## FOURTH CAUSE OF ACTION

### Breach of Contract - Express Indemnity

(Against Sophia Hakakian, Eliot Khakshoy and Zoes 1-50, Inclusive)

29. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

30. Cross-Complainant entered into the referenced written contract with Cross-Defendants Hakakian and Khakshoy on or about November 3, 2020.

31. Cross-Complainant has performed all obligations pursuant to the contracts with the Cross-Defendants Hakakian and Khakshoy, and each of them, except those obligations which Cross-Complainant was either prevented and/or excused from performing.

32. Cross-Complainant has suffered damages proximately caused by Cross-Defendants Hakakian and Khakshoy, and each of them, by virtue of the breach of the written agreements to indemnify and hold harmless Cross-Complainant as a result of the action of Plaintiffs and by virtue of their failure to obtain liability insurance with liability limits of at least $1 million per occurrence. Cross-Complainant has reasonably incurred attorney's fees and investigative expenses relative to the breach of the contract by Cross-Defendants Hakakian and Khakshoy, and each of them, including, but not limited to, court costs, attorney's fees and other expenses, and Cross-Defendants, are liable to all and each of them.

## FIFTH CAUSE OF ACTION

### [Intentionally Omitted]

## SIXTH CAUSE OF ACTION

### Breach of Contract - Express Indemnity

(Against Orbic Air, LLC. and Zoes 1-50, Inclusive)

39. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

40. Cross-Complainant alleges that an agreement implied by conduct was entered into between Cross-Complainant and Orbic Air, LLC ("Orbic Air") on or about May 29, 2021 when Benjamin Pettingill of Orbic Air entered into an agreement implied by their conduct to use Cross-Complainant's air space to perform a fly over above the wedding on Cross-Complainant's property. Pursuant to this agreement, Cross-Complainant informed Orbic Air that a certificate of insurance covering the flyover was required with limits of $1 million per occurrence and $2 million in the general aggregate and identifying Cross-Complainant and Ronald and Lisa Semler as additional insureds. Orbic Air accepted the terms of the agreement to do the flyover by email on May 29, 2021 by providing a certificate of insurance. Cross-Complainant further alleges that contract that was implied by conduct was evidenced by providing the written certificate of liability insurance agreeing that the flyover was covered by insurance and protecting Cross-Complainant from any liability as a result of the flyover.

41.     Pursuant to said agreement Cross-Defendants Orbic Air agreed to furnish insurance the May 30, 2021 event that took place on Saddlerock Ranch, during which time the Plaintiffs' sustained their damages.

42.     Cross-Defendant Orbic Air provided Cross-Complainant a Certificate of Insurance in which Cross-Complainant was named as an additional insured on Cross-Defendant Butterfly Floral's liability insurance policy.

43.     Cross-Complainant has performed all obligations pursuant to the agreement with Orbic Air, and each of them, except those obligations which Cross-Complainant was either prevented and/or excused from performing.

44.     Cross-Complainant has suffered damages proximately caused by Cross-Defendant Orbic Air, and each of them, by virtue of the breach of the Certificate of Insurance provisions to indemnify and hold harmless Cross-Complainant as a result of the action of Plaintiffs.    Cross-Complainant further alleges that Orbic Air breached the agreement by its failure to inform Cross-Defendant that the flyover was not covered by the certificate of insurance before the flyover and by its failure to inform Cross-Complainant that it would be subcontracting the flyover to another individual or company, which individual or company had not complied with the requirement of providing Cross-Complainant with a certificate of insurance indemnifying and holding harmless Cross-Complainant for the flyover.    Cross-Complainant has reasonably incurred attorney's fees and expenses relative to the breach of the contract by Cross-Defendant Orbic Air, and each of them, including, but not limited to, court costs, attorney's fees and other expenses, and Cross-Defendant is liable to each of them for all damages of Cross-Complainant as a result of its breach of the agreement.

## SEVENTH CAUSE OF ACTION

### Fraud – Intentional Misrepresentation

(Against Sophia Hakakian and Eliot Khakshoy and Zoes 1-50, Inclusive)

45. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

46. Cross-Complainant entered into the referenced written contract with Cross-Defendants Hakakian and Khakshoy on or about November 3, 2020.

47. Pursuant to said written contract and its implied terms therein, Cross-Defendants Hakakian and Khakshoy, agreed to indemnify and hold harmless Cross-Complainants against all claims for damage or injury to persons or property arising out of or in any way connected with Cross-Defendants' acts or omissions by Cross Defendants' or their agents, employees, vendors, contractors, guests or invitees in their use and presence on Saddlerock Ranch as described in the Plaintiffs' Complaint for Damages.

48. Cross-Defendants further agreed to furnish insurance for their event that took place on Saddlerock Ranch, during which time the Plaintiffs' sustained their damages.

49. Cross-Defendants Hakakian and Khakshoy did not provide Cross-Complainant with the Certificate of Insurance.

50. Cross-Defendants Hakakian and Khakshoy intentionally misrepresented their compliance with the contract provisions when they did not.

51. Cross-Defendants Hakakian and Khakshoy contracted with Cross-Defendant Butterfly Floral to provide floral arrangements and to set up various wedding alters during the ceremony. Cross-Defendant Butterfly Floral provided Cross-Complainant a Certificate of Insurance in which Cross-Complainant was named as an additional insured on Cross-Defendant Butterfly Floral's liability insurance policy.

52. Cross-Defendants Hakakian and Khakshoy omitted the plan agreed upon their subcontractor Cross-Defendant Butterfly Floral to erect a temporary alter on Cross-Complainant's Main Lawn in an effort to avoid having Cross-Complainant investigate their activities, including the failure to obtain proper insurance coverage for the event and the failure of their wedding coordinator to coordinate the activities of the vendors, particularly Butterfly Floral and Orbic Air.

53. Cross-Complainant relied on the representations it had been given and permitted Cross-Defendants Hakakian and Khakshoy to hold the event and Cross-Defendant Butterfly Floral onto its property where Cross-Defendant Butterfly Floral erected alters without Cross-Complainant's knowledge or consent.

54. While planning the wedding, Cross-Defendant Kotelyan, as Cross-Defendants Hakakian, Khakshoy and Ariel Khakshoy's agent, enlisted the services of Cross-Defendant Orbic Air and set up

a reservation to have it perform a flyover during the wedding to drop rose petals. As Cross-Complainant only provided the grounds for the wedding, a certificate of insurance was required listing Cross-Complainant as an additional insured from Cross-Defendant Orbic Air's insurer.

55. Cross-Defendant Orbic Air provided Cross-Complainant with the Certificate of Aviation Insurance knowing that the insurance did not cover the helicopter being used in the wedding or that Cross-Complainant could not be an additional insured on its policy.

56. Cross-Complainant relied on the representations it had been given and permitted Cross-Defendants Hakakian and Khakshoy to hold the event and Cross-Defendant Orbic Air and its agents to fly a helicopter onto its property and within its airspace to drop rose pedals on the wedding ceremony.

57. Although Cross-Defendants Butterfly Floral and Orbic Air named Cross-Complainant as an additional insured of the respective policies, both insurance carriers have denied coverage to Cross-Complainant in breach of the representations made by Cross-Defendants and their agents. Cross-Defendant Orbic Air's insurer has clearly stated that no helicopter listed on the certificate of insurance was involved in the flyover that caused the incident on which this action is based.

58. Cross-Defendants Hakakian and Khakshoy, through their agents intentionally misrepresented the Certificates of Insurance were valid and their subcontractors named Cross-Complainant as additional insured of the respective policies, in order to comply with the wedding contract.

59. Cross-Defendants Hakakian and Khakshoy intentionally omitted to inform Cross-Complainant regarding the use of a temporary, unsecured alters in the wedding.

60. Cross-Defendants Hakakian and Khakshoy' agent, Cross-Defendant Kotelyan, intentionally misrepresented that the helicopter being used in the flyover was one of the helicopters listed on the Certificate of Insurance. At no time did any of the Cross-Defendants correct the misrepresentation that Cross-Complainant was relying on in permitting Cross-Defendants onto its property and within its air space.

61. Cross-Defendants Hakakian and Khakshoy's representations on and in connection with the contract and the Certificates of Insurance and/or in connection with the wedding were false.

62. Cross-Defendants Hakakian and Khakshoy knew the representations were false when they made the representations or they made the representations recklessly without regard for the truth.

63. Cross-Defendants Hakakian and Khakshoy intended that Cross-Complainant rely on that representations by providing the Certificates of Insurance of Cross-Defendant Butterfly Floral and Orbic Air naming Cross-Complainant as additional insured of the respective policies, the same Certificates of Insurance to which both of their carriers have denied coverage to Cross-Complainant.

64. Cross-Complainant reasonably relied on the representations of Cross-Defendants Hakakian and Khakshoy and those of their agents.

65. Had Cross-Complainant known the truth of Cross-Defendants Hakakian and Khakshoy's misrepresentations and those of their agents, it would have not allowed Cross-Defendants Hakakian and Khakshoy and their guests and vendors on its property and within its airspace, and Cross-Defendants Butterfly Floral and Orbic Air to provide their services at the venue.

66. Cross-Complainant was harmed in an amount to be proven at trial as a result of permitting Cross-Defendants Hakakian and Khakshoy and their guests and vendors onto its property and within its airspace, and Cross-Defendants Butterfly Floral and Orbic Air LLC to provide their services at the property, based on Cross-Defendants Hakakian and Khakshoy's and their agents' misrepresentations. Cross-Defendants Hakakian and Khakshoy should be held liable and for any and all expenses of litigation, sums paid by way of settlement and/or judgment, and all other costs incidental to the defense, investigation and handling of this litigation.

67. Cross-Complainant's reliance on Cross-Defendants Hakakian and Khakshoy's misrepresentations and those of their agents caused Cross-Complainant's damages in an amount to be determined according to proof at trial.

68. Cross-Defendants Hakakian and Khakshoy's conduct in this regard was malicious, oppressive and fraudulent, entitling Cross-Complainant to punitive and exemplary damages in addition to compensatory damages.

\\\

\\\

\\\

**EIGHTH CAUSE OF ACTION**

**[Intentionally Omitted]**

**NINTH CAUSE OF ACTION**

**Fraud – Intentional Misrepresentation**

(Against Orbic Air, LLC and Zoes 1-50, Inclusive)

86. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

87. Cross-Complainant entered into the above referenced agreement with Orbic Air to provide Cross-Complainant with liability insurance and to name Cross-Complainant as an additional insured on its liability insurance policy.

88. Pursuant to said agreement, Orbic Air agreed to furnish insurance for the event that took place on Saddlerock Ranch, during which time the Plaintiffs' sustained their damages. In addition, pursuant to said agreement, Orbic Air was required to provide Cross-Complainant the referenced general liability insurance coverage.

89. While planning the wedding, Cross-Defendant Kotelyan, as Cross-Defendants Hakakian, Khakshoy and Ariel Khakshoy's agent, enlisted the services of Cross-Defendant Orbic Air and set up a reservation to have it perform a flyover during the wedding to drop rose petals. As Cross-Complainant only provided the grounds for the wedding, a certificate of insurance was required listing Cross-Complainant as an additional insured from Cross-Defendant Orbic Air's insurer.

90. Cross-Defendant Orbic Air provided Cross-Complainant with the purported Certificate of Aviation Insurance knowing that the insurance did not cover the helicopter being used in the wedding or that Cross-Complainant could not be an additional insured on its policy.

91. Cross-Complainant relied on the representations it had been given and permitted Cross-Defendant Orbic Air and its agents to fly a helicopter onto its property and within its airspace to drop rose pedals on the wedding ceremony.  At no time prior to the wedding did Cross-Defendant Orbic Air inform Cross-Complainant that the representations on its Certificate of Insurance were false and that a different Helicopter and/or pilot would be flying over the property and taking part in the wedding.

92. Cross-Defendants did this knowing that Cross-Complainant was relying on the Certificate of Insurance in allowing Orbic Air LLC and/or its subcontractors or agents to fly within its airspace as part of the wedding. Cross-Defendants did this knowing the representations in the Certificate of Insurance was false and would not cover Cross-Complainants for any liability caused by the flyover.

93. Although Cross-Defendant Orbic Air named Cross-Complainant as an additional insured of its insurance policy, Cross-Defendant Orbic Air's insurance carrier has denied coverage to Cross-Complainant. Cross-Defendant Orbic Air's insurer has clearly stated that no helicopter listed on the certificate of insurance was involved in the flyover that caused the incident on which this action is based.

94. Cross-Defendant Orbic Air intentionally misrepresented the Certificate of Insurance was valid and it had named Cross-Complainant as additional insured of its insurance policy.

95. Cross-Defendant Orbic Air intentionally misrepresented that the helicopter being used in the flyover was one of the helicopters listed on the Certificate of Insurance. At no time did the Cross-Defendant Orbic Air correct the misrepresentation that Cross-Complainant was relying on in permitting Cross-Defendant Orbic Air onto its property and within its air space.

96. Cross-Defendant Orbic Air's representations on and in connection with the contract and the Certificates of Insurance and/or in connection with the wedding were false.

97. Cross-Defendant Orbic Air knew the representations were false when it made the representations or it made the representations recklessly without regard for the truth.

98. Cross-Defendant Orbic Air intended that Cross-Complainant rely on that representations by providing the Certificate of Insurance naming Cross-Complainant as additional insured of the policy, the same Certificate of Insurance to which Cross-Defendant Orbic Air's carrier has denied coverage to Cross-Complainant because the Certificate of Insurance was not valid to cover the flyover at the wedding ceremony.

99. Cross-Complainant reasonably relied on Cross-Defendant Orbic Air's representations.

100. Had Cross-Complainant known the truth of Cross-Defendant Orbic Air's misrepresentations, it would have not allowed Cross-Defendant Orbic Air to provide its services at the venue.

101. Cross-Complainant was harmed in an amount to be proven at trial as a result of permitting Cross-Defendant Orbic Air to provide its services at the property, based on Cross-Defendant Orbic Air's misrepresentations. Cross-Defendant Orbic Air should be held liable and for any and all expenses of litigation, sums paid by way of settlement and/or judgment, and all other costs incidental to the defense, investigation and handling of this litigation.

102. Cross-Complainant's reliance on Cross-Defendant Orbic Air's misrepresentations caused Cross-Complainant's damages in an amount to be determined according to proof at trial.

103. Cross-Defendant Orbic Air's conduct in this regard was malicious, oppressive and fraudulent, entitling Cross-Complainant to punitive and exemplary damages in addition to compensatory damages.

## **TENTH CAUSE OF ACTION**

### **Fraud – Intentional Misrepresentation**

(Against Anna Kotelyan dba Haute Couture Events and Zoes 1-50, Inclusive)

104. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

105. Cross-Complainant entered into the referenced written contract with Cross-Defendants Hakakian and Khakshoy on or about November 3, 2020.

106. Pursuant to said written contract and its implied terms therein, Cross-Defendants Hakakian and Khakshoy, agreed to indemnify and hold harmless Cross-Complainants against all claims for damage or injury to persons or property arising out of or in any way connected with Cross-Defendants' acts or omissions by Cross Defendants' or their agents, employees, vendors, contractors, guests or invitees in their use and presence on Saddlerock Ranch as described in the Plaintiffs' Complaint for Damages.

107. Cross-Defendants further agreed to furnish insurance for their event that took place on Saddlerock Ranch, during which time the Plaintiffs' sustained their damages.

108. Cross-Defendants Hakakian and Khakshoy designated Cross-Defendant Kotelyan, through Ms. Kotelyan's company, Haute Couture Events, as their agent for planning the wedding.

109. Cross-Defendants Hakakian and Khakshoy, through their agent, Cross-Defendant Kotelyan, contracted with Cross-Defendant Butterfly Floral to provide floral arrangements and to set up various wedding alters during the ceremony. Cross-Defendant Butterfly Floral provided Cross-Complainant a Certificate of Insurance in which Cross-Complainant was purportedly named as an additional insured on Cross-Defendant Butterfly Floral's liability insurance policy.

110. Cross-Defendant Kotelyan omitted from her disclosures to Cross-Complainant the plan agreed upon with Cross-Defendant Butterfly Floral to erect the temporary alter on Cross-Complainant's Main Lawn in an effort to avoid having Cross-Complainant investigate their activities, including the failure to obtain proper insurance coverage for the event.

111. Cross-Complainant relied on the representations it had been given and permitted Cross-Defendants Hakakian and Khakshoy to hold the event and Cross-Defendant Butterfly Floral onto its property where Cross-Defendant Butterfly Floral erected the alter requested by Cross-Defendant Kotelyan without Cross-Complainant's knowledge or consent.

112. While planning the wedding, Cross-Defendant Kotelyan, as Cross-Defendants Hakakian, Khakshoy and Ariel Khakshoy's agent, enlisted the services of Cross-Defendant Orbic Air and set up a reservation to have it perform a flyover during the wedding to drop rose petals. As Cross-Complainant only provided the grounds for the wedding, a certificate of insurance was required listing Cross-Complainant as an additional insured from Cross-Defendant Orbic Air's insurer.

113. Cross-Defendant Orbic Air provided Cross-Complainant with the purported Certificate of Aviation Insurance knowing that the insurance did not cover the helicopter being used in the wedding or that Cross-Complainant could not be an additional insured on its policy.

114. Cross-Complainant relied on the representations it had been given and permitted Cross-Defendants Hakakian and Khakshoy to hold the event and Cross-Defendant Orbic Air and its agents to fly a helicopter onto its property and within its airspace to drop rose pedals on the wedding ceremony.

115. Although Cross-Defendants Butterfly Floral and Orbic Air purportedly named Cross-Complainant as an additional insured of the respective policies, both insurance carriers have denied coverage to Cross-Complainant.  Cross-Defendant Orbic Air's insurer has clearly stated that no

helicopter listed on the certificate of insurance was involved in the flyover that caused the incident on which this action is based.

116. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, intentionally misrepresented the Certificates of Insurance were valid and the subcontractors named Cross-Complainant as additional insured of the respective policies, in order to comply with the wedding contract.

117. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, intentionally omitted to inform Cross-Complainant regarding the use of a temporary, unsecured alters in the wedding.

118. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, intentionally misrepresented that the helicopter being used in the flyover was one of the helicopters listed on the Certificate of Insurance.  At no time did Cross-Defendant Kotelyan correct the misrepresentation that Cross-Complainant was relying on in permitting Cross-Defendants onto its property and within its air space.

119. Cross-Defendant Kotelyan's representations, as Cross-Defendants Hakakian and Khakshoy's agent, on and in connection with the contract and the Certificates of Insurance and/or in connection with the wedding were false.

120. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent knew the representations were false when she made the representations or she made the representations recklessly without regard for the truth.

121. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, intended that Cross-Complainant rely on that representations by providing the Certificates of Insurance of Cross-Defendant Butterfly Floral and Orbic Air naming Cross-Complainant as additional insured of the respective policies, the same Certificates of Insurance to which both of their carriers have denied coverage to Cross-Complainant.

122. Cross-Complainant reasonably relied on Cross-Defendant Kotelyan's representations, as Cross-Defendants Hakakian and Khakshoy's agent.

123. Had Cross-Complainant known the truth of Cross-Defendant Kotelyan's misrepresentations, as Cross-Defendants Hakakian and Khakshoy's agent, it would have not allowed Cross-Defendants Hakakian and Khakshoy and their guests on its property and within its airspace, and Cross-Defendants Butterfly Floral and Orbic Air to provide their services at the venue.

124. Cross-Complainant was harmed in an amount to be proven at trial as a result of permitting Cross-Defendants Hakakian and Khakshoy and their guests onto its property and within its airspace, and Cross-Defendants Butterfly Floral and Orbic Air LLC to provide their services at the property, based on Cross-Defendant Kotelyan's misrepresentations, as Cross-Defendants Hakakian and Khakshoy's agent.

125. As a result of Cross-Defendant Kotelyan's fraud, Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent should be held liable and for any and all expenses of litigation, sums paid by way of settlement and/or judgment, and all other costs incidental to the defense, investigation and handling of this litigation.

126. Cross-Complainant's reliance on Cross-Defendant Kotelyan's misrepresentations, as Cross-Defendants Hakakian and Khakshoy's agent, caused Cross-Complainant's damages in an amount to be determined according to proof at trial.

127. Cross-Defendant Kotelyan's conduct, as Cross-Defendants Hakakian and Khakshoy's agent, in this regard was malicious, oppressive and fraudulent, entitling Cross-Complainant to punitive and exemplary damages in addition to compensatory damages.

## ELEVENTH CAUSE OF ACTION

### Negligence

(Against Sophia Hakakian and Eliot Khakshoy and Zoes 1-50, Inclusive)

128. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

129. Cross-Defendants Hakakian and Khakshoy owed Cross-Complainant a duty of reasonable care and breached their duty as alleged herein.

130. Cross-Defendants Hakakian and Khakshoy negligently failed to comply with the contract provisions and to provide Cross-Complainant with a Certificate of Insurance.

131. Cross-Defendants Hakakian and Khakshoy, through their agents, negligently failed to verify that its vendors/subcontractors Butterfly Floral and Orbic Air provided Cross-Complainant with valid Certificates of Insurance naming Cross-Complainant as additional insured of the respective policies that represented to provide coverage for any liability to Cross-Complainant.

132. Cross-Defendants Hakakian and Khakshoy negligently contracted with Cross-Defendant Butterfly Floral to construct and furnish and unsecure structure used at the wedding. Cross-Defendants Hakakian and Khakshoy negligently omitted to inform the plan to erect said temporary alter on Cross-Complainant's Main Lawn in an effort to avoid having Cross-Complainant investigate their activities, including the failure to obtain proper insurance coverage for the event.

133. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian, Khakshoy and Ariel Khakshoy's agent, negligently enlisted the services of Cross-Defendant Orbic Air and set up a reservation to have it perform a flyover during the wedding to drop rose petals, without verifying the safety of the flyover or that the Certificate of Insurance was valid.

134. The accident alleged by Plaintiff was caused, in part by the negligent acting of Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, who specifically decided to coordinate the hiring of the helicopter flight over the wedding and the erection of the unsecured structure, and negligently failed to inform the vendors of the other vendors' activities to ensure the safety of the guests.

135. Cross-Complainant had nothing to do with Cross-Defendants Hakakian and Khakshoy's negligence due to deciding and contracting with Cross-Defendant Butterfly Floral to set up the wedding altar (unsecured structure) that fell over and allegedly hit the decedent in the head causing injury. In fact, Cross-Defendants Hakakian and Khakshoy specifically decided not to use the permanent wedding altar that Cross-Complainant has available at the Saddlerock Ranch for wedding ceremonies.

136. Cross-Complainant also had nothing to do with Cross-Defendants Hakakian and Khakshoy's decision, through their agent Kotelyan, to contract the services of Cross-Defendant Orbic Air for the flight over the wedding that caused the turbulent, low-flying downdraft produced by the helicopter as it flew over the wedding venue.

137. Cross-Complainant only provided the grounds upon which the wedding was permitted, Cross-Complainant had nothing to do with the vendors hired by Cross-Defendants Hakakian and Khakshoy directly or through their agents or the decision not to coordinate the activities of the vendors. Cross-Complainant was diligent in requesting the Certificates of Insurance, and to be named as an additional insured in the respective policies, and justifiably relied on the representations as to the validity of the policies.

138. In acting, and in failing to act, as mentioned above, Cross-Defendants Hakakian and Khakshoy acted in a negligent, reckless, careless and improper manner.

139. As a direct and proximate result of Cross-Defendants Hakakian and Khakshoy's negligent conduct, Cross-Complainant was harmed because it must defend and answer to the present litigation and both Butterfly Floral and Event Design Inc. and Orbic Air LLC insurance carriers have denied coverage to Cross-Complainant.

140. Cross-Complainant has suffered damages proximately caused by Cross-Defendants Hakakian and Khakshoy's negligence, carelessness, recklessness and improper acting manner. Cross-Complainant has reasonably incurred attorney's fees and investigative expenses relative to Cross-Defendants Hakakian and Khakshoy's negligence, and each of them, including, but not limited to, court costs, attorney's fees and other expenses, and Cross-Defendant is liable to each of them.

## TWELFTH CAUSE OF ACTION

### Negligence

(Against Butterfly Floral and Event Design Inc. and Zoes 1-50, Inclusive)

141. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

142. Cross-Defendant Butterfly Floral owed Cross-Complainant a duty of reasonable care and breached its duty as alleged herein.

143. Cross-Defendant Butterfly Floral negligently failed to provide Cross-Complainant with a valid Certificate of Insurance.

144. Cross-Defendant Butterfly Floral failed to verify the validity of the Certificate of Insurance naming Cross-Complainant as additional insured of the insurance policy that represented to provide coverage for any liability to Cross-Complainant.

145. Cross-Defendant Butterfly Floral negligently constructed and furnished and unsecure structure used at the wedding. Cross-Defendant Butterfly Floral negligently omitted to inform the plan to erect said temporary alter on Cross-Complainant's Main Lawn in an effort to avoid having Cross-Complainant investigate their activities, including the failure to obtain proper insurance coverage for the event.

146. The accident alleged by Plaintiff was caused, in part by the negligent acting of Cross-Defendant Butterfly Floral by constructing and furnishing the unsecured structure and the failure to communicate with the wedding coordinator regarding the activities of the other vendors to ensure the safety of the guests.

147. Cross-Complainant had nothing to do with Cross-Defendant Butterfly Floral's negligence in constructing and setting up the wedding altar (unsecured structure) that fell over and allegedly hit the decedent in the head causing injury. In fact, Cross-Defendant Butterfly Floral decided to construct and furnished the unsecured structure, although there is a permanent wedding altar that Cross-Complainant has available at the Saddlerock Ranch for wedding ceremonies.

148. Cross-Complainant only provided the grounds upon which the wedding was permitted, Cross-Complainant had nothing to do with the performance of the services provided by Cross-Defendant Butterfly Floral. Cross-Complainant was diligent in requesting the Certificate of Insurance, and to be named as an additional insured in the insurance policy.

149. In acting, and in failing to act, as mentioned above, Cross-Defendant Butterfly Floral acted in a negligent, reckless, careless and improper manner.

150. As a direct and proximate result of Cross-Defendant Butterfly Floral's negligent conduct, Cross-Complainant was harmed because it must defend and answer to the present litigation and Butterfly Floral insurance carrier has denied coverage to Cross-Complainant.

151. Cross-Complainant has suffered damages proximately caused by Cross-Defendant Butterfly Floral's negligence, carelessness, recklessness and improper acting manner. Cross-

Complainant has reasonably incurred attorney's fees and investigative expenses relative to Cross-Defendant Butterfly Floral's negligence, and each of them, including, but not limited to, court costs, attorney's fees and other expenses, and Cross-Defendant is liable to each of them.

## THIRTEENTH CAUSE OF ACTION

### Negligence

(Against Orbic Air, LLC. and Zoes 1-50, Inclusive)

152. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

153. Cross-Defendant Orbic Air owed Cross-Complainant a duty of reasonable care and breached its duty as alleged herein.

154. Cross-Defendant Orbic Air negligently failed to provide Cross-Complainant with a valid Certificate of Insurance.

155. Cross-Defendant Orbic Air failed to verify the validity of the Certificate of Insurance naming Cross-Complainant as additional insured of the insurance policy that represented to provide coverage.

156. Cross-Defendant Orbic Air negligently contracted to perform a flyover during the wedding to drop rose petals, without verifying the safety of the flyover or the activities of the other vendors. In fact, the pilot never walked the grounds to observe any safety hazards or potential unsafe conditions that may be caused by the flyover.

157. The accident alleged by Plaintiff was caused, in part by the negligent acting of Cross-Defendant Orbic Air or its agents or subcontractors by flying the helicopter over the wedding in an unsafe manner.

158. Cross-Complainant had nothing to do with Cross-Defendant Orbic Air's or its agents or subcontractors' unsafe flight that caused the turbulent, low-flying downdraft produced by the helicopter as it flew over the wedding venue.

159. Cross-Complainant only provided the grounds upon which the wedding was permitted, Cross-Complainant had nothing to do with the performance of the services provided by Cross-

1  Defendant Orbic Air. Cross-Complainant was diligent in requesting the Certificate of Insurance, and
2  to be named as an additional insured in the insurance policy.

3      160. In acting, and in failing to act, as mentioned above, Cross-Defendant Orbic Air acted in a
4  negligent, reckless, careless and improper manner.

5      161. As a direct and proximate result of Cross-Defendant Orbic Air's negligent conduct, Cross-
6  Complainant was harmed because it must defend and answer to the present litigation and Orbic Air's
7  insurance carrier has denied coverage to Cross-Complainant.

8      162. Cross-Complainant has suffered damages proximately caused by Cross-Defendant Orbic
9  Air's negligence, carelessness, recklessness and improper acting manner. Cross-Complainant has
10  reasonably incurred attorney's fees and investigative expenses relative to Cross-Defendant Orbic Air's
11  negligence, and each of them, including, but not limited to, court costs, attorney's fees and other
12  expenses, and Cross-Defendant is liable to each of them.

13  ## FOURTEENTH CAUSE OF ACTION

14  ### Negligence

15  (Against Hosking Aviation, Inc. and Zoes 1-50, Inclusive)

16      163. Cross-Complainant re-alleges and incorporates herein by this reference each and every
17  allegation contained in the preceding paragraphs, as though fully set forth herein.

18      164. Cross-Defendant Hosking Aviation owed Cross-Complainant a duty of reasonable care
19  and breached its duty as alleged herein.

20      165. Cross-Defendant Hosking Aviation negligently contracted to perform a flyover during the
21  wedding to drop rose petals, without verifying the safety of the flyover.

22      166. The accident alleged by Plaintiff was caused, in part by the negligent acting of Cross-
23  Defendant Hosking Aviation by flying the helicopter over the wedding in an unsafely manner.

24      167. Cross-Complainant had nothing to do with Cross-Defendant Hosking Aviation's unsafe
25  flight that caused the turbulent, low-flying downdraft produced by the helicopter as it flew over the
26  wedding venue.

27      168. Cross-Complainant only provided the grounds upon which the wedding was permitted,
28  Cross-Complainant had nothing to do with the performance of the services provided by Cross-

Defendant Hosking Aviation. Cross-Complainant was diligent in requesting the Certificate of Insurance, and to be named as an additional insured in the insurance policy.

169. In acting, and in failing to act, as mentioned above, Cross-Defendant Hosking Aviation acted in a negligent, reckless, careless and improper manner.

170. As a direct and proximate result of Cross-Defendant Hosking Aviation's negligent conduct, Cross-Complainant was harmed because it must defend and answer to the present litigation and Orbic Air insurance carrier has denied coverage to Cross-Complainant.

171. Cross-Complainant has suffered damages proximately caused by Cross-Defendant Hosking Aviation's negligence, carelessness, recklessness and improper acting manner. Cross-Complainant has reasonably incurred attorney's fees and investigative expenses relative to Cross-Defendant Hosking Aviation's negligence, and each of them, including, but not limited to, court costs, attorney's fees and other expenses, and Cross-Defendant is liable to each of them.

## FIFTEENTH CAUSE OF ACTION

### Negligence

(Against Anna Kotelyan dba Haute Couture Events and Zoes 1-50, Inclusive)

172. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

173. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, owed Cross-Complainant a duty of reasonable care and breached her duty as alleged herein.

174. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, negligently failed to verify that its vendors/subcontractors Butterfly Floral and Orbic Air provided Cross-Complainant with valid Certificates of Insurance naming Cross-Complainant as additional insured of the respective policies that represented to provide coverage for any liability to Cross-Complainant.

175. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, negligently contracted with Cross-Defendant Butterfly Floral to construct and furnish and unsecure structure used at the wedding. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, negligently omitted to inform the plan to erect said temporary alter on Cross-

Complainant's Main Lawn in an effort to avoid having Cross-Complainant investigate their activities, including the failure to obtain proper insurance coverage for the event.

176. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian, Khakshoy and Ariel Khakshoy's agent, negligently enlisted the services of Cross-Defendant Orbic Air and set up a reservation to have it perform a flyover during the wedding to drop rose petals, without verifying the safety of the flyover and without communicating with the other vendors regarding the flyover to ensure the safety of the guests.

177. The accident alleged by Plaintiff was caused, in part by the negligent acting of Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, who specifically decided to coordinate the hiring of the helicopter flight over the wedding and the unsecured structure, but failed to inform the two vendors about the unsafe conditions that may be caused by their activities.

178. Cross-Complainant had nothing to do with Cross-Defendant Kotelyan's negligence, as Cross-Defendants Hakakian and Khakshoy's agent, due to deciding and contracting with Cross-Defendant Butterfly Floral to set up the wedding altar (unsecured structure) that fell over and allegedly hit the decedent in the head causing injury. In fact, Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, specifically decided not to use the permanent wedding altar that Cross-Complainant has available at the Saddlerock Ranch for wedding ceremonies.

179. Cross-Complainant also had nothing to do with Cross-Defendant Kotelyan's decision, as Cross-Defendants Hakakian and Khakshoy's agent, to contract the services of Cross-Defendant Orbic Air for the flight over the wedding that caused the turbulent, low-flying downdraft produced by the helicopter as it flew over the wedding venue.

180. Cross-Complainant only provided the grounds upon which the wedding was permitted, Cross-Complainant had nothing to do with the vendors hired by Cross-Defendants Hakakian and Khakshoy directly or through their agent, Cross-Defendant Kotelyan. Cross-Complainant was diligent in requesting the Certificates of Insurance, and to be named as an additional insured in the respective policies.

181. In acting, and in failing to act, as mentioned above, Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, acted in a negligent, reckless, careless and improper manner.

182. As a direct and proximate result of Cross-Defendant Kotelyan's negligent conduct, as Cross-Defendants Hakakian and Khakshoy's agent, Cross-Complainant was harmed because it must defend and answer to the present litigation and both Butterfly Floral and Event Design Inc. and Orbic Air LLC insurance carriers have denied coverage to Cross-Complainant.

183. Cross-Complainant has suffered damages proximately caused by Cross-Defendant Kotelyan's negligence, carelessness, recklessness and improper acting manner, as Cross-Defendants Hakakian and Khakshoy's agent.

184.    Cross-Complainant has reasonably incurred attorney's fees and investigative expenses relative to Cross-Defendant Kotelyan's negligence, as Cross-Defendants Hakakian and Khakshoy's agent, and each of them, including, but not limited to, court costs, attorney's fees and other expenses, and Cross-Defendant is liable to each of them.

## SIXTEENTH CAUSE OF ACTION

### Negligent Misrepresentation

(Against Sophia Hakakian and Eliot Khakshoy and Zoes 1-50, Inclusive)

185. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

186. When Cross-Defendants Hakakian and Khakshoy, through their agent Ms. Kotelyan, represented to Cross-Complainant that their subcontractors Butterfly Floral and Orbic Air had provided valid Certificates of Insurance naming Cross-Complainant as additional insured of the respective policies, they had no reasonable grounds to believe this representation was true.

187. In the alternative, Cross-Defendants Hakakian and Khakshoy had a contractual duty to exercise reasonable care in verifying the validity of the Certificates of Insurance that provided coverage for any liability for bodily injury or property damage.

188. Cross-Defendants Hakakian and Khakshoy breached their duty to Cross-Complainant when they failed to exercise reasonable care in verifying the validity of the Certificates of Insurance that provided coverage for any liability to Cross-Complainant.

189. Cross-Complainant justifiably relied upon the representations of the Certificates of Insurance provided by Butterfly Floral and Orbic Air as Cross-Defendants Hakakian and Khakshoy's subcontractors and naming Cross-Complainant as additional insured of the respective policies that provided coverage for any liability to Cross-Complainant.

190. As a direct and proximate result of Cross-Defendants Hakakian and Khakshoy's negligent misrepresentations, and Cross-Complainant's reliance upon Cross-Defendants Hakakian and Khakshoy's misrepresentations, Cross-Complainant was harmed in that it relied upon said representation and information to its detriment. Cross-Complainant must defend and answer to the present litigation and both Butterfly Floral and Event Design Inc. and Orbic Air LLC insurance carriers have denied coverage to Cross-Complainant.

191. But for Cross-Defendants Hakakian and Khakshoy's negligence in representing that their subcontractors had provided valid Certificates of Insurance that provided coverage for any liability to Cross-Complainant, Cross-Complainant would have not allowed Cross-Defendants Hakakian and Khakshoy and their guests on its property and within its airspace, and Cross-Defendants Butterfly Floral and Orbic Air to provide their services at the venue.

192. Cross-Complainant alleges that Cross-Defendants Hakakian and Khakshoy's negligent misrepresentations proximately caused Cross-Complainant's damages in an amount to be determined according to proof at trial.

## SEVENTEENTH CAUSE OF ACTION

### [Intentionally Omitted]

## EIGHTEENTH CAUSE OF ACTION

### Negligent Misrepresentation

(Against Orbic Air, LLC. and Zoes 1-50, Inclusive)

THE SEMLER COMPANIES/MALIBU DBA SADDLEROCK RANCH'S SECOND AMENDED CROSS-COMPLAINT

201. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

202. When Cross-Defendant Orbic Air represented to Cross-Complainant that it had provided valid Certificate of Insurance naming Cross-Complainant as additional insured of the insurance policy, it had no reasonable grounds to believe this representation was true.

203. In the alternative, Cross-Defendant Orbic Air had a contractual duty to exercise reasonable care in verifying the validity of the Certificate of Insurance that provided coverage for any liability for bodily injury or property damage.

204. Cross-Defendant Orbic Air breached their duty to Cross-Complainant when it failed to exercise reasonable care in verifying the validity of the Certificate of Insurance that provided coverage for any liability to Cross-Complainant.

205. Cross-Complainant justifiably relied upon the representations of the Certificate of Insurance provided by Orbic Air and naming Cross-Complainant as additional insured of the insurance policy that provided coverage for any liability to Cross-Complainant.

206. As a direct and proximate result of Cross-Defendant Orbic Air's negligent misrepresentations, and Cross-Complainant's reliance upon Cross-Defendant Orbic Air's misrepresentations, Cross-Complainant was harmed in that it relied upon said representation and information to its detriment. Cross-Complainant must defend and answer to the present litigation and Orbic Air insurance carrier has denied coverage to Cross-Complainant.

207. But for Orbic Air's negligence in representing that it had provided valid Certificates of Insurance that provided coverage for any liability to Cross-Complainant, Cross-Complainant would have not allowed Cross-Defendant Orbic Air on its property and within its airspace and to provide its services at the venue.

208. Cross-Complainant alleges that Cross-Defendant Orbic Air's negligent misrepresentations proximately caused Cross-Complainant's damages in an amount to be determined according to proof at trial.

\\\

\\\

## NINETEENTH CAUSE OF ACTION

### Negligent Misrepresentation

(Against Anna Kotelyan dba Haute Couture Events and Zoes 1-50, Inclusive)

209. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

210. When Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, represented to Cross-Complainant that the subcontractors Butterfly Floral and Orbic Air had provided valid Certificates of Insurance naming Cross-Complainant as additional insured of the respective policies, she had no reasonable grounds to believe this representation was true.

211. In the alternative, Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, had a contractual duty to exercise reasonable care in verifying the validity of the Certificates of Insurance that provided coverage for any liability for bodily injury or property damage.

212. Cross-Defendant Kotelyan, as Cross-Defendants Hakakian and Khakshoy's agent, breached her duty to Cross-Complainant when she failed to exercise reasonable care in verifying the validity of the Certificates of Insurance that provided coverage for any liability to Cross-Complainant.

213. Cross-Complainant justifiably relied upon the representations of the Certificates of Insurance provided by Butterfly Floral and Event Design Inc. as Cross-Defendants Hakakian and Khakshoy's subcontractors and naming Cross-Complainant as additional insured of the respective policies that provided coverage for any liability to Cross-Complainant.

214. As a direct and proximate result of Cross-Defendant Kotelyan's negligent misrepresentations, as Cross-Defendants Hakakian and Khakshoy's agent, and Cross-Complainant's reliance upon Cross-Defendant Kotelyan's misrepresentations, as Cross-Defendants Hakakian and Khakshoy's agent, Cross-Complainant was harmed in that it relied upon said representation and information to its detriment. Cross-Complainant must defend and answer to the present litigation and both Butterfly Floral and Event Design Inc. and Orbic Air LLC insurance carriers have denied coverage to Cross-Complainant.

215. But for Cross-Defendant's Kotelyan negligence, as Cross-Defendants Hakakian and Khakshoy's agent, in representing that the subcontractors had provided valid Certificates of Insurance

that provided coverage for any liability to Cross-Complainant, Cross-Complainant would have not allowed Cross-Defendants Hakakian and Khakshoy and their guests on its property and within its airspace, and Cross-Defendants Butterfly Floral and Orbic Air to provide their services at the venue.

216.     Cross-Complainant     alleges     that     Cross-Defendant     Kotelyan's     negligent misrepresentations, as Cross-Defendants Hakakian and Khakshoy's, proximately caused Cross-Complainant's damages in an amount to be determined according to proof at trial.

## TWENTIETH CAUSE OF ACTION

### Breach of implied covenant of good faith and fair dealing - Express Indemnity

(Against Sophia Hakakian and Eliot Khakshoy and Zoes 1-50, Inclusive)

217. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

218. Cross-Complainant entered into the referenced written contract with Cross-Defendants Hakakian and Khakshoy on or about November 3, 2020.

219. Pursuant to said written contract and its implied terms therein, Cross-Defendants Hakakian and Khakshoy, agreed to indemnify and hold harmless Cross-Complainants against all claims for damage or injury to persons or property arising out of or in any way connected with Cross-Defendants' acts or omissions by Cross Defendants' or their agents, employees, vendors, contractors, guests or invitees in their use and presence on Saddlerock Ranch as described in the Plaintiffs' Complaint for Damages.

220. Cross-Defendants further agreed to furnish insurance for their event that took place on Saddlerock Ranch, during which time the Plaintiffs' sustained their damages.

221. In every contract there is an implied covenant of good faith and fair dealing by each party not to do anything which will deprive the other parties of the benefits of the contract, and a breach of this covenant by failure to deal fairly or in good faith gives rise to an action for damages. *Sutherland v. Barclays Amer./Mort. Corp.* (1997) 53 Cal. App.4th 299, 61 Cal. Rptr.2d 614.

222. Cross-Defendants Hakakian and Khakshoy breached the covenant of good faith and fair dealing when they failed to provide Cross-Complainant with the Certificate of Insurance.  Even more

egregious, Cross-Defendants Hakakian and Khakshoy breached the covenant of good faith and fair dealing when they failed to purchase liability insurance for their wedding at Saddlerock Ranch.

223. Cross-Defendants Hakakian and Khakshoy further breached the covenant of good faith and fair dealing when they failed to verify that its vendors/subcontractors Butterfly Floral and Orbic Air provided Cross-Complainant with valid Certificates of Insurance naming Cross-Complainant as additional insured of the respective policies that represented to provide coverage for any liability to Cross-Complainant.

224. As a direct and proximate result of Cross-Defendants Hakakian and Khakshoy's breach of the implied covenant good faith and fair dealing, Cross-Complainant has been forced to defend and answer the present litigation and both Butterfly Floral and Orbic Air insurance carriers have denied coverage to Cross-Complainant. To the same extent, Cross-Complainant has incurred substantial damages and costs, including, but not limited to, its attorneys' fees, expenses and costs incurred in seeking to defend itself from the present litigation and to mitigate and remedy Cross-Defendants Hakakian and Khakshoy's breaches of the covenant of implied good faith and fair dealing by the filing and conduct of this Cross-Complaint.

225. Cross-Complainant alleges that Cross-Defendants Hakakian and Khakshoy's breach of the implied covenant of good faith and fair dealing proximately caused Cross-Complainant's damages in an amount to be determined according to proof at trial.

226. Cross-Defendants Hakakian and Khakshoy's conduct in breaching the covenant of good faith and fair dealing was malicious, oppressive and fraudulent, entitling Cross-Complainant to punitive and exemplary damages in addition to compensatory damages.

## TWENTY-FIRST CAUSE OF ACTION

### [Intentionally Omitted]

## TWENTY-SECOND CAUSE OF ACTION

### Breach of implied covenant of good faith and fair dealing - Express Indemnity

(Against Orbic Air, LLC. and Zoes 1-50, Inclusive)

237. Cross-Complainant re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

238. Cross-Complainant entered into the above referenced agreement with Orbic Air evidenced by the certificate of insurance.

239. Pursuant to said agreement Cross-Defendant Orbic Air agreed to furnish insurance for their event that took place on Saddlerock Ranch, during which time the Plaintiffs' sustained their damages.

240. As Cross-Complainant only provided the grounds for the wedding of Cross-Defendants Hakakian and Khakshoy, a certificate of insurance was required listing Cross-Complainant as an additional insured from Cross-Defendant Orbic Air's insurer. Cross-Defendant Orbic Air provided Cross-Complainant with a Certificate of Aviation Insurance.

241. In every contract there is an implied covenant of good faith and fair dealing by each party not to do anything which will deprive the other parties of the benefits of the contract, and a breach of this covenant by failure to deal fairly or in good faith gives rise to an action for damages. *Sutherland v. Barclays Amer./Mort. Corp.* (1997) 53 Cal. App.4th 299, 61 Cal. Rptr.2d 614.

242. Cross-Defendant Orbic Air breached the covenant of good faith and fair dealing when it failed to provide Cross-Complainant with a valid Certificate of Insurance. Cross-Defendant Orbic Air's insurer has clearly stated that no helicopter listed on the certificate of insurance was involved in the flyover that caused the incident on which this action is based.

243. Cross-Defendant Orbic Air further breached the covenant of good faith and fair dealing when it failed to verify the validity of the Certificate of Insurance naming Cross-Complainant as additional insured of the insurance policy that represented to provide coverage for any liability to Cross-Complainant.

244. As a direct and proximate result of Cross-Defendant Orbic Air's breach of the implied covenant good faith and fair dealing, Cross-Complainant has been forced to defend and answer the present litigation and Cross-Defendant Orbic Air's insurance carrier has denied coverage to Cross-Complainant. To the same extent, Cross-Complainant has incurred substantial damages and costs, including, but not limited to, its attorneys' fees, expenses and costs incurred in seeking to defend itself

from the present litigation and to mitigate and remedy Cross-Defendant Orbic Air's breaches of the covenant of implied good faith and fair dealing by the filing and conduct of this Cross-Complaint.

245.    Cross-Complainant alleges that Cross-Defendant Orbic Air's breach of the implied covenant of good faith and fair dealing proximately caused Cross-Complainant's damages in an amount to be determined according to proof at trial.

246.    Cross-Defendant Orbic Air's conduct in breaching the covenant of good faith and fair dealing was malicious, oppressive and fraudulent, entitling Cross-Complainant to punitive and exemplary damages in addition to compensatory damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Cross-Complainant prays for judgment against Cross-Defendants, and each of them, as follows:

1. For such amount, if any, Cross-Complainant is found liable to Plaintiffs';

2. For equitable contribution against Cross-Defendants in the event that any amounts are found recoverable from Cross-Complainant;

3. For a declaration that the legally responsible conduct of Cross-Defendants contributed in some percentage as a proximate cause of Plaintiffs' damages, if any;

4. For a declaration of the rights and duties between Cross-Complainant and Cross-Defendants in the event Cross-Complainant is held liable to Plaintiffs';

5. For a declaration that Cross-Complainant be completely indemnified and held harmless against any loss or expenses incurred by reason of the present litigation;

6. For general damages, in an amount according to proof;

7. Special damages in an amount according to proof;

8. Interest on compensatory damages at the legal rate from the date of injury pursuant to C.C.P. §3291;

9. For other compensatory damages for other economic losses;

10. Punitive and exemplary damages against all Cross-Defendants in an amount appropriate to punish and make examples of the Cross-Defendants, and each of them [seventh, ninth and tenth causes of action only];

1    11. Costs and expenses of suit incurred herein;

2    12. For reasonable attorneys' fees; and

3    13. For such other and further relief as the Court may deem just and proper.

4

5    DATED: October 14, 2024                SKANE MILLS LLP

6

7                                  By: _____

8                                  Heather L. Mills, Esq.
                                   Joel P. Glaser, Esq.
9                                  Attorneys for Cross-Defendant/Cross-
                                   Complainant/Cross-Defendant, THE SEMLER
10                                 COMPANIES/MALIBU dba SADDLEROCK RANCH

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE SEMLER COMPANIES/MALIBU DBA SADDLEROCK RANCH'S SECOND AMENDED CROSS-COMPLAINT

| **Superior Court of the State of California**<br>**County of Los Angeles** | FOR COURT USE ONLY |
|---|---|
| TITLE OF CASE (Abbreviated)<br>***Yaghoub Kermanshahi, et al. v. Orbic Air. LLC, et al.*** | |
| ATTORNEY(S) NAME AND ADDRESS<br>Heather L. Mills, Esq.  (SBN 190950)<br>Joel P. Glaser, Esq., SBN 194442)<br>SKANE MILLS LLP<br>550 South Hope Street, Suite 410<br>Los Angeles, CA 90071<br>T: (213) 452-1200 / F: (213) 452-1201<br>hmills@skanemills.com / jglaser@skanemills.com | |

| ATTORNEY(S) FOR:  Defendant/Cross-Complainant/Cross-Defendant, The Semler Companies/Malibu DBA Saddlerock Ranch | HEARING:  DATE-TIME-DEPT: | CASE NUMBER:<br>22SMCV01974 |
|---|---|---|

## DECLARATION OF SERVICE
### [C.C.P. §§ 1013A and 2015.5]

I, the undersigned, declare:

I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to this action.  My business address is 550 South Hope Street, Suite 410, Los Angeles, CA 90071.

I served the following document(s):
1. **THE SEMLER COMPANIES/MALIBU DBA SADDLEROCK RANCH'S SECOND AMENDED CROSS-COMPLAINT,** on the parties in this action addressed as follows:

### SEE ATTACHED ATTORNEY SERVICE LIST

__xx__ **BY ELECTRONIC MAIL**: My electronic notification address is gvalverde@skanemills.com and I electronically served, on October 14, 2024, the aforementioned documents on all counsel whose electronic notification addresses are listed in the attorney service list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on October 14, 2024, at Los Angeles, California.

_____/s/ Gonzalo Valverde
Gonzalo Valverde

**129**

*Yaghoub Kermanshahi, et al. v. Orbic Air, LLC, et al.*
Our File Number: 131-1106

**SERVICE LIST**

| | |
|---|---|
| Adam R. Lugo, Esq.<br>STRASSBURG, GILMORE & WEI, LLP<br>1250 East Walnut St., Suite 136<br>Pasadena, CA 91106<br><br>T: 626.683.9933 / 626.683.9944<br>Email: adam@sgwlawyers.com<br>nicole@sgwlawyers.com<br>laura@sgwlawyers.com | Attorneys  for Plaintiffs<br>YAGHOUB KERMANSHAHI and SIMIN KOREI |
| Doug Griffith, Esq.<br>FITZPATRICK, HUNT & PAGANO, LLP<br>633 West Fifth Street, 60th Floor<br>Los Angeles, CA 90071<br>Tel.: 213.873.2100<br>Email: doug.griffith@fitzhunt.com<br>martha.rodriguez@fitzhunt.com<br>Martha Rodriguez, Legal Assistant | Attorneys for Defendant/Cross-Defendant HOSKING AVIATION INC. |
| Michael J. Terhar, Esq.<br>Jonathan E. Hembree, Esq.<br>Carl Basile, Esq.<br>CUNNINGHAM SWAIM, LLP<br>2 North Lake Avenue, Suite 550<br>Pasadena, CA 91101<br><br>T: 626-765-3000 / F: 626-765-3030<br>Email: mterhar@cunninghamswaim.com<br>jhembree@cunninghamswaim.com<br>cbasile@cunninghamswaim.com<br>cvivanco@cunninghamswaim.com | Attorneys for Defendant/Cross-Complainant/Cross-Defendant ORBIC AIR, LLC |

| | |
|---|---|
| Ted R. Crisler, Esq.<br>LAW OFFICE OF ANDERSON & CHANG<br>1851 East 1st St., Ste. 750<br>Santa Ana, CA 92705-4027<br>Mailing Address<br>CNA<br>P.O. Box 94743<br>Chicago, IL 60690<br>T: 714.931.2213 / F: 714.256.7616<br>Email: ted.crisler@cna.com<br>cnascalifornia@cna.com | Attorneys for Defendant/Cross-Complainant/Cross-Defendant,<br>BUTTERFLY FLORAL AND EVENT DESIGN, INC. |
| Marta Alcumbrac, Esq.<br>NEMECEK & COLE, APC<br>16255 Ventura Boulevard, Suite 300<br>Encino, CA 91436-2300<br>T.: 818.788.9500 / F: 818.501.0328<br>Email: malcumbrac@nemecek-cole.com<br><br>Michael R. Halvorsen, Esq.<br>Howard P. Brody, Esq.<br>Vivian Zambrano, Esq.<br>PHILLIPS, SPALLAS & ANGSTADT LLP<br>11150 W. Olympic Blvd. Suite 670<br>Los Angeles, CA 90064-1839<br>Email: | Attorneys for Cross-Defendants/Cross-Complainants,<br>SOPHIA HAKAKIAN and ELIOT KHAKSHOY |
| Michael C. Murphy, Esq.<br>Michael@murphlaw.net<br>Michael C. Murphy, Jr. Esq.<br>Michael.jr@murphlaw.net<br>Carmen R. Selame, Esq.<br>carmen@murphlaw.net<br>LAW OFFICES OF MICHAEL C. MURPHY<br>2625 Townsgate Road, Suite 330<br>Westlake Village, CA 91361<br>T: (818) 558-3718<br>F: (805) 367-450 | Attorneys for Cross-Defendant, ANNA KOTELYAN |